RICHARD A. URANN *vs.* EZRA J. COATES & another.

A. conveyed his land to B., to whom he was indebted, by an absolute deed, and B. at the same time promised orally to convey or pay to A. any surplus that might remain of the estate or its proceeds after discharge of the debt. B. afterwards told A. that he had made a memorandum to the same effect, but never delivered it to him. On B.'s death there was found, among his valuable papers, a writing signed by him, not addressed to any person, by which he did "agree and bind" himself to pay the above mentioned surplus to A. Below this writing was the following, also signed by him: "This memorandum is made for the use of my executor or administrator only; A. has no legal or equitable claim against me or my estate, but upon payment of my debt, any balance shall enure to A.'s benefit." *Held,* that there was a declaration of the trust in writing within the meaning of the Gen. Sts. *c.* 100, § 19.

BILL IN EQUITY against Ezra J. Coates and Albert Thompson, alleging that Isaac P. Rand, being in debt to Benjamin Rand, and having mortgaged to him certain real estate in Roxbury and Dorchester, conveyed to him the said real estate by a deed absolute in form, but really upon trust to apply the avails to the payment of said debts and incumbrances, and to pay over and account for the balance to Isaac P. Rand; that this trust was declared in the following writing: —

"Boston, July 21, 1865. I, Benjamin Rand, having purchased the estate of Isaac P. Rand, of Roxbury, said estate being situated partly in Roxbury and partly in Dorchester in the state of Massachusetts, for his deed delivered to me on July 21, 1865, do hereby agree and bind myself and my heirs to pay over to the said Isaac P. Rand whatever balance shall remain over and above the amount necessary to discharge my original claims against Isaac P. Rand, and the charges against the said estate, which by my purchase of the same have become vested in me, the said payment to be made when all such claims and charges shall have been fully liquidated and discharged. [Here followed a list of the claims and charges.] And also in all charges and expenses which have been or shall be incurred by me or my heirs in discharging the above claims and charges and in carrying on the estate. Benjamin Rand.

"This memorandum is made by me for the use of my executor or administrator only. Neither Isaac P. Rand nor those claim-

ing under him have any legal or equitable claim against me or my estate; but upon the payment of my debt, interest and all charges, as above mentioned, any balance shall enure to the benefit of Isaac P. Rand and those claiming under him. Benjamin Rand."

The bill further alleged that Benjamin Rand died intestate leaving the defendant Coates his sole heir; that the defendant Thompson was the administrator of his estate; that sales of part of the real estate had been made for more than enough to pay said debts and incumbrances; that there was a large balance in the hands of the defendants; and that Isaac P. Rand assigned to the plaintiff all his claims against Benjamin Rand or the defendants. The prayer was for discovery and an account; and that the defendants might pay over and convey to the plaintiff all money and property due and belonging to him under the terms of the trust, and for further relief.

The defendants filed a plea denying that Benjamin Rand held the land upon any trust as alleged, or that any such trust had devolved upon them or either of them by his death; " and as to so much and such parts of the bill as they have not pleaded unto, the defendants, in no sort waiving the benefit of their plea, but relying and insisting thereon," answered that the deed from Isaac P. Rand to Benjamin Rand was, and was intended to be, an absolute deed, and was not delivered or received upon any trust, and that the writings set forth in the bill did not confer, and were not intended to confer, any right at law or in equity upon Isaac P. Rand.

Hearing before *Wells*, J., who reported for the determination of the full court the case which is stated in the opinion.

*H. F. French & J. E. Maynadier*, for the plaintiff.

*E. D. Sohier & C. A. Welch*, for the defendants.

Colt, J. The bill charges that Benjamin Rand held the land, conveyed to him by the absolute deed of Isaac P. Rand, upon trust to apply the avails of it to the payment of certain incumbrances and debts due him, and to account for any surplus to Isaac P. Rand, the grantor, to whose right the plaintiff, as assignee, has succeeded. The writings by which it is claimed that

this trust is declared are fully set forth, and it is alleged that, under the trust, sales have been made of more than enough to pay all demands and charges, leaving a surplus to which the plaintiff is entitled.

The defendants file a plea denying that Benjamin in his lifetime held the land upon any such trust, or that any trust was devolved upon them, as his representatives, by his death. The purpose, no doubt, is to obtain first the decision of the court upon the question whether, upon the facts disclosed, any trust is raised, which can be enforced; for if no trust shall be found to exist, then the investigation of long and detailed accounts will be avoided. This is the point which was argued at the bar, and we proceed to its consideration without regard to supposed irregularities in the pleadings.

The land in question was conveyed by an absolute quitclaim deed, dated on the 15th, but delivered on the 21st day of July 1865, to Benjamin, who then held large demands against Isaac P. Rand, secured by mortgage on the same premises. The evidence sufficiently proves that Benjamin orally agreed, at and before the time of the delivery of the deed of the equity, and as part of the transaction, that any surplus over and above his claim, that might remain of the estate or its proceeds, should belong to Isaac P. No written memorandum of the agreement was made before the delivery of the deed, but it was suggested, at the time, that Benjamin should put it in the shape of a memorandum, safely deposited, in case anything should happen to him. And Benjamin afterwards informed Isaac P. that soon after the transaction he made a memorandum of the agreement. No such paper was ever delivered to, or came into the possession of Isaac P., but after the death of Benjamin a writing of that description was found safely deposited in his bank trunk. By the terms of this writing, he agreed to pay over any balance of the estate remaining, substantially in accordance with the oral agreement. It was signed by Benjamin, and dated July 21, 1865; and underneath the first signature was an additional statement, also signed, in these words: " This memorandum is made by me for the use of my executor or administrator only. Neither Isaac P. Rand nor those claim-

ing under him have any legal or equitable claim against me or my estate ; but upon the payment of my debt, interest and all charges, as above mentioned, any balance shall enure to the benefit of Isaac P. Rand and those claiming under him."

We are of opinion that this writing is sufficient as a declaration of trust, within the meaning of our statute. It is much more formal and particular in its statement than declarations of this description by letter, by answer in chancery, affidavit, recital in bond or deed, or in pamphlet, which have all been held sufficient, and with reference to which it is held to be no objection that they were drawn up for another purpose and not addressed to nor intended for the use of the *cestui que trust.* See cases cited in Browne on St. of Frauds, §§ 98, 99.

It is not essential that the memorandum relied on should have been delivered to any one as a declaration of trust. It is a question of fact, in all cases, whether the. trust had been perfectly created ; and upon that question the delivery or non-delivery of the instrument is a significant fact, of greater or less weight according to the circumstances. If the alleged trust arises from mere gift, delivery of the writing by which it is declared is not always required as proof that the gift was perfected, for the court will consider all the facts bearing upon the question of intention, and it has been held that if a party execute a voluntary settlement, and the deed recites that it is sealed and delivered, it will be binding on the settlor, even if he never parts with it and keeps it in his possession until his death. *Bunn* v. *Winthrop*, 1 Johns. Ch. 329. Perry on Trusts, § 103, and cases cited. It must always however appear that the fiduciary relation is completely established and not left as a matter of executory agreement only, regard being had to the situation of the property, the relations of the parties, and the purposes and objects had in view. In this case the verbal agreement in which the trust originated was made in consideration of the conveyance by Isaac P. of his interest in the real estate, and the trust is founded on a good consideration. The fact is of weight in aiding the court to carry out the intentions of the parties ; and the want of a delivery of the memorandum becomes of less significance.

The law as thus laid down is to be found mainly in decisions under the words of the English statute, which requires that all declarations and creations of trust shall be manifested or proved in writing. These were the words of our earlier law, (St. 1783, c. 37, § 3,) and they remained until the first general revision of the statutes, the requirement of the present statute being that the trust shall be created or declared in writing. Gen. Sts. c. 100, § 19. The same change has been made in other states; and in those in which the question has been incidentally before the courts, the tendency is to rule that this abbreviation in the words does not change the law, and that " created or declared " are equivalent to "manifested or proved." Trusts may be created in the first instance in writing; they more commonly originate in the oral agreements and transactions of the parties, and are subsequently declared in writing. Our statute embraces both descriptions. It had been settled by repeated decisions under the old statute, when this change was made, that an express trust was sufficiently declared, if shown by any proper written evidence disclosing facts which created a fiduciary relation. Under this construction, the additional words of the old statute seemed immaterial, and are omitted. And we are of opinion that no change in the meaning or effect of it was intended or made. Perry on Trusts, § 81, and cases cited.

In view of the law thus stated, the fact that there was no delivery of the memorandum in this case is not of controlling importance. It is impossible to account for its existence and safe preservation, unless there was an intention that it should be used, if necessary, to prove a trust. The statement that it is made for the use of the executor or administrator of the trustee implies this. The *cestui que trust* was informed of its existence; and by its terms a perfect trust is declared. It is indeed declared that neither Isaac P., nor those claiming under him, have any legal or equitable claim against the maker or his estate. But this statement, if such was its intention, cannot control the effect of the memorandum in establishing the trust. That results, as matter of law, from the proof. We are inclined to think that its intention was not to defeat an equitable claim to the proceeds of the

estate conveyed, but only to protect the maker against personal responsibility beyond the actual receipts in administering the trusts. *Decree for the plaintiff.*