RICHARD A. URANN *vs.* EZRA J. COATES & another.

Suffolk.    Nov. 18, 1874. — Jan. 12, 1875.    WELLS & DEVENS, JJ..
                                  absent.

A., being indebted to B., gave him a mortgage of land which was then subject to
prior mortgages.  B., to prevent foreclosure of these mortgages, took an assign-
ment of them, paying less than was due on them.  Afterwards, A. conveyed the
land to B. by an absolute deed, and B. made a declaration of trust, by which he
agreed to pay to A. " whatever balance shall remain over and above the amount
necessary to discharge my original claims against the said A. and the charges
against the said estate, which, by my purchase of the same, have become vested
in me ; the said payment to be made when all such claims and charges shall have
been fully liquidated and discharged ; the said claims and charges being contained
in certain mortgages made on the said estate, made by the said A. to myself, to "
the other mortgagees, naming them, " and by them assigned to me."  *Held*, that
B. was entitled to charge A. with the full amount of the assigned mortgages, and
not merely with the amounts paid by him.

The heir at law of one who held land in trust to sell it and apply the proceeds in
payment of a debt due him from the grantor, and to pay the balance to him, sold
the land, in ignorance of the trust, and agreed to give warranty deeds.  Before
the deeds were given, the existence of the trust was discovered, and the purchasers
refused to take the deeds without a bond of indemnity against the *cestui que trust,*
which the heir gave.  On a bill in equity against the heir by the *cestui que trust,*
which terminated in the latter's favor, it was *held* that the heir could not charge
a commission of five per cent. on the land sold for giving such bonds.

A trustee is entitled to a reasonable compensation for his services, under all the cir-
cumstances of the case.

In the settlement of a trustee's account, the trustee can only charge interest at the
rate of six per cent. per annum on money expended by him, unless there is an
agreement for a higher rate ; and money received by him is to be first applied to
extinguish accrued interest.

A. conveyed land to B. by an absolute deed, and B. made a declaration of trust by
which it appeared that he held the land in trust for A., to sell the same, discharge
certain debts, and pay the balance to A.  After this B. died, and his heir disputed
the validity of the trust.  *Held*, on a bill in equity by A. against the heir, in which
the trust was declared valid and an account was taken, that the heir was not en-
titled to costs or counsel fees.

A. being indebted to B. at a time when gold and silver were the only legal tender,
conveyed to him land in trust to sell it from time to time, discharge his debt and
pay the balance to A.  The land was sold when paper money was a legal tender,
and the debt was so discharged.  *Held*, that the trustee, in accounting with A.,
could not charge him with the difference in value between gold and silver and
currency.

MORTON, J.    After the former hearing in this case, 109 Mass.
581, it was referred to a master, and each party has filed excep-
tions to certain of his findings.    These exceptions were heard

before a justice of this court, and the case comes before us upon an appeal taken by each party to his rulings and findings. We are to consider only such questions in the case as are raised by these appeals.

1. The plaintiff appeals from the decision of the presiding justice allowing the defendant to charge the full amount due upon certain mortgages, purchased by and assigned to him, instead of the amount for which he purchased them. The facts, so far as material, in regard to these mortgages, are as follows: In August, 1861, Isaac P. Rand, being largely indebted to Benjamin Rand, gave him a mortgage upon real estate in Roxbury and Dorchester, which was then subject to several prior mortgages. In 1865, the holders of two of the prior mortgages threatened to foreclose them, and to prevent this and protect his subsequent mortgage, Benjamin took an assignment of these mortgages, paying for them less than the amount due. Afterwards, on July 21, 1865, Isaac P. conveyed to Benjamin the said real estate by an absolute deed. On the same day Benjamin signed a memorandum, which after his death was found among his papers, and which this court has decided was a valid declaration of trust in regard to the real estate thus conveyed. *Urann* v. *Coates*, 109 Mass. 581. The trusts upon which Benjamin held the estate are to be ascertained from this memorandum. By it he agrees to pay over to said Isaac P. "whatever balance shall remain over and above the amount necessary to discharge my original claims against the said Rand, and the charges against the said estate, which, by my purchase of the same, have become vested in me; the said payment to be made when all such claims and charges shall have been fully liquidated and discharged; the said claims and charges being contained in certain mortgages made on the said estate, made by the said Rand to myself, to the North Bank of Boston, and to the Faneuil Hall Bank of Boston, and by them assigned to me," &c.

We are of opinion that, by the fair construction of this declaration of trust, Benjamin Rand was entitled to charge against Isaac P. Rand the full amount of the assigned mortgages. The assignments were made before the deed of July 21, 1865, and before any trust was created, and by virtue of them the mortgage titles were vested in Benjamin, and he had the right to enforce

them against Isaac P. to the full amount of the mortgage debts, without regard to the amount he had paid. At the time the trust was created, they were, to their full amount, in the terms of the declaration, charges against the said estate which by his purchase had become vested in Benjamin Rand. He had bought them, not as trustee for the benefit of the *cestui que trust*, but before the trust was created, for his own protection, as the holder of a subsequent mortgage.

There is nothing in the declaration of trust to indicate an intention of the parties that the estate of Isaac P. was to be discharged from any part of these mortgage debts. They were, to their full amount, existing charges against the estate, vested in the trustee, which were to be " fully liquidated and discharged " before the balance to be paid to Isaac P. could be ascertained.

2. The defendants appeal from the ruling, that the charge of four thousand three hundred and seventy-nine dollars, for compensation for warranty of title of land sold, should be disallowed. The material facts bearing upon this question are as follows : The defendant Coates is the heir at law of Benjamin Rand. Before he had notice of the trust, he sold parts of the real estate, and agreed to give warranty deeds. But before the deeds were given, the existence of the will of Benjamin Rand and of the declaration of trust became known, and the purchasers refused to complete the purchase without a bond of indemnity from some one in this country, Coates being a resident of England. Such bond was accordingly given by Coates as principal, and the defendant Thompson as surety. Coates charges and claims a commission of five per cent. upon the amount received for the land thus sold, as compensation for the warranties. We are of opinion that this claim ought not to be allowed, though such services, if beneficial to the trust estate and rendered in good faith, might be taken into consideration upon the question of the compensation of the trustee. It is not claimed that the defendant Coates has suffered any loss by reason of these warranties. They were not made for the purpose of benefiting the *cestui que trust*. On the contrary, they were in part warranties against any claim under the will of Benjamin Rand, which recognized the trust, and provided for the interest of the *cestui que trust*, and were thus steps taken by the defendant Coates in a course of proceed

ings hostile to the plaintiff. We do not think that, after the controversy has terminated against him, the defendant can charge a commission against the *cestui que trust* for making such warranties.

3. Both parties appeal from the decision of the presiding justice fixing the compensation to be allowed to the trustee. This presents purely a question of fact. It would not be useful to discuss in detail the evidence bearing upon it. A trustee is entitled to a reasonable compensation for his services under all the circumstances of the case. Many of the duties of the trustee in this case were performed by clerks and agents who were paid out of the estate, and upon all the evidence we see no reason to doubt that the amount allowed by the presiding justice was reasonable and sufficient.

4. The claim of the defendants to amend their account by charging seven per cent. interest, with annual rests, instead of six per cent., as charged therein, was properly disallowed. The legal rate of interest is six per cent. in the absence of any agreement for a larger rate, and there being no such agreement, there is no reason why the defendants should charge a larger rate. The ruling of the presiding justice, that interest at six per cent. is to be allowed, the receipts being first applied to extinguish accrued interest, is in accordance with the rule of interest adopted in this Commonwealth, and was correct.

5. The ruling was correct, that costs and counsel fees incurred in this cause are not to be allowed by the master. Such charges are allowed in cases where a trustee, without any fault of his own, is compelled to resort to the court to ascertain his duties under an ambiguous will or deed. But this action is not of such character. It is a controversy in which the trustee is asserting his private rights adversely to the plaintiff, and is occasioned by his own fault, and falls within the ordinary class of cases in which the prevailing party is entitled to costs. *Blake* v. *Pegram*, 109 Mass. 541, 558.

6. The defendants claim that, as, when the original debt of Isaac P. Rand to Benjamin Rand was contracted, the only legal tender was gold and silver, and as they were paid in currency upon the sales of the estates from time to time, they are entitled to charge the difference between the value of currency and gold

at the times the payments were made. This charge was properly disallowed. It is immaterial whether these payments were made in gold or currency. Each payment as made was a payment of money which was a legal tender, and extinguished the debt due to the trustee to the amount paid, whether it was gold or currency. *Stark* v. *Coffin*, 105 Mass. 328, and cases cited.

We have considered all the questions argued by the parties. Some minor exceptions to the master's report were not argued, and we assume that they are waived. The result of the whole is that the decree of the justice who heard the case is

*Affirmed.*

*H. F. French*, for the plaintiff.
*C. A. Welch*, for the defendants.