TOWLE, *Adm'r*, *v.* WOOD, *Adm'x*.

An agreement of two savings-bank depositors, that the survivor shall have the other's deposit, each retaining the absolute title and control of his deposit during life, is a testamentary disposition of property not made according to the statute of wills, and is invalid.

ASSUMPSIT. Facts found by a referee. In 1848, S. B., wife of F. B., deposited $100 in the Institution for Savings, a savings-bank located in Newburyport, Mass. She received a deposit-book for the amount. Subsequently other deposits were made by her, or by her husband for her, which were entered in the same book, and June 7, 1875, there was $464.02 remaining to her credit in the bank. In 1850 F. B. made a deposit in the same bank in his own name, which, October 20, 1875, amounted to $468.47, and at the time of making that deposit, or some time after, F. B. and S. B. went to the bank together, and desired to have the deposit of each in case of his or her death go to the survivor; and, in pursuance of this request, the treasurer entered on the book of F. B., at the beginning of the account, as follows : " Payable to self or his wife." At the same time he entered on the book of S. B., " Payable to self or husband." They agreed that at the decease of either, his or her deposit should belong to the survivor, but the absolute ownership and control of each deposit was to remain unchanged until the decease of one of the parties.

S. B. died in February, 1878, leaving a will, giving to Wood, the defendant's intestate, the residuum of her estate, and naming him as executor. He collected the amount due from the bank ; and the plaintiff, who is administrator on the estate of F. B., brings this suit to recover the amount collected by Wood in his lifetime from the bank.

*Frink*, for the plaintiff. It is not claimed that this money can be recovered because there was a completed gift *inter vivos* or *causa mortis*. The transaction between Mr. and Mrs. B. lacks some important elements to perfect a gift.

I. It was simply placing money on deposit in their joint names, with the intent that the sum remaining should go to the survivor. The legal effect of such an act, the intent concurring, is to give the fund remaining at the death of either party to the one who survives. 1 Will. Ex., *pt.* 2, *s.* 675 ; *Marshal* v. *Crutwell*, L. R. 20 Eq. 328; *Batstone* v. *Salter*, L. R. 10 Ch. App. 431. In the very recent English case of *Marshal* v. *Crutwell*, *supra*, the full force of the legal effect of such an act is recognized, although the court arrived at a conclusion adverse to the claimant of the fund by survivorship, because the intent was found wanting. In this case, the referee has distinctly found that the object of this transaction was that the

survivor might take.   In *Batstone* v. *Salter*, *supra*, the Lord Chancellor speaks of the legal operation of a transfer into joint names when a benefit was intended, as giving the fund to the survivor without any qualification or exception.   When this agreement was first entered into, the common-law rule of the unity of husband and wife, and his right to reduce her choses into possession, obtained in this state.

II.  This transaction can also be sustained as a mutual or reciprocal contract between Mr. and Mrs. B.   It has all the elements of a valid promise for a promise.   The promises were not void, and were concurrent.   Metc. Cont. 182; Sto. Cont. 447.   It was a continuing contract, and was ratified from time to time so long as the parties lived.   At the death of the wife it was an executed promise on the part of the husband.   A voidable promise, however, is a good consideration for a promise.   Sto. Cont. 447; 1 Par. Cont. 451.

III.  We do not deem it necessary to examine the question as to whether this was not a reduction by the husband to his own possession, under the law as it then existed, of this fund of his wife's. If it becomes material, further investigation of the law as to what constitutes a reduction to possession can be made, but in our view the plaintiff's case does not demand it.

*A. R. Hatch*, for the defendant.

STANLEY, J.   The plaintiff concedes that he cannot recover on the ground of a gift *inter vivos* or *causa mortis*, but he claims that the act of the parties was a placing of money on deposit, in their joint names, with the intent that the sum remaining should go to the survivor ; and he cites *Marshal* v. *Crutwell*, L. R. 20 Eq. 328, and *Batstone* v. *Salter*, L. R. 10 Ch. App. 431, in support of this view. Those cases are different in principle from this.   In *Marshal* v. *Crutwell* the money was deposited in the bank upon the understanding that it was to be drawn by both parties, and the balance remaining at the death of either was to go to the survivor.   Here the referee finds that neither intended to give up the right of control of their respective deposits during their respective lives.   Each party retained absolute control over his deposit during life, but each expressed the desire that the survivor should have the balance remaining at the decease of the other.   It was a testamentary disposition of the balance remaining at the decease, but it lacked the requisite formalities of execution to make it effectual.   *Bartlett* v. *Remington*, 59 N. H. 364, 366.

Another claim of the plaintiff is, that he can recover on the ground of a promise for a promise.   The promise, if any, was in substance,—" I bequeath to you the balance of my deposit which I do not expend during my life, if you survive me, in consideration of your bequeathing to me the balance of your deposit which you do not expend during your life, if I survive you."   There was

nothing in this agreement which prevented either party from withdrawing his deposit, and making any other disposition of the money that suited his convenience or pleasure. No liability would have been incurred if it had been done. The mutuality essential to make a promise a sufficient consideration for a promise is wanting, for neither promise was absolute. Each of the parties reserved the right to disable himself to perform his promise. Either party could withdraw all his deposits, and leave the other without any consideration for his promise. It is said that a voidable promise is a good consideration for a promise; but this is not the general rule. It is true in respect to the contracts or promises of infants made with persons of full age. 1 Par. Con. 451, 452. This case falls within the principle of *Cutting* v. *Gilman*, 41 N. H. 147, 153; *Reed* v. *Spaulding*, 42 N. H. 119; *Craig* v. *Kittredge*, 46 N. H. 57; and *Bartlett* v. *Remington*, 59 N. H. 364.

Another position taken by the plaintiff is, that the agreement and acts of the parties created a trust on the part of each in favor of the other; but the difficulty with this view is, that neither ever parted with the control of his deposit, and never intended to do so. On the contrary, each retained absolute control, and the unconditional right to make any different disposition of the funds which he chose. These facts are inconsistent with the position that a trust was created. To create a trust, each of the parties must have been deprived of the power of revocation and control. *Bartlett* v. *Remington, supra; Gerrish* v. *New Bedford Savings Inst.*, 128 Mass. 159; *Urann* v. *Coates*, 109 Mass. 581; *Ray* v. *Simmons*, 11 R. I. 266; *Stone* v. *Bishop*, 4 Cliff. 593.

Nor was the act of the parties a reducing to possession of the property of the wife by the husband. The husband exercised no control over the fund in the lifetime of the wife, and never intended to do it. It was not only necessary that he should reduce it to his possession, but that there should be coupled with this an intention to make it his own. *Hall* v. *Young*, 37 N. H. 134; *Hoyt* v. *White*, 46 N. H. 45; *George* v. *Cutting*, 46 N. H. 130, and authorities *passim*. F. B. never having parted with the possession and control of her deposit, could dispose of it by her will.

*Judgment for the defendant.*

CLARK, J., did not sit: the others concurred.