DUDLEY A. DORR, executor, *vs.* HOWARD CLAPP, trustee.

Suffolk.    December 15, 1893. — February 28, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Construction of Written Agreement — Trust — Heirs.*

A. and B. executed an agreement under seal, which, after reciting that A. had purchased certain real estate, and that B. had "furnished all the money for said purchase," for which two mortgages had been given, provided that "the equity in all said real estate is, and shall be until some sale and conveyance thereof is made, owned by" A. and B. "in equal shares"; that A. should "collect the rents, and superintend the repairs made, and make no charge for his own time and services in such collections and supervision"; that "the net income of said property," after deducting interest on the mortgages and all necessary disbursements on account of the property, should "be equally divided between" A. and B.; and that, at any time within eighteen months from the date of the agreement, B. would accept a deed from A. "of the premises, conveying as good a title as received to his half, and assume and discharge mortgages." Four years after the date of the agreement B. died, and one year later A. sold the property in question, and the mortgages were paid and discharged; and after paying the mortgages and the expenses of the sale there remained a certain balance. The executor of B.'s will brought a bill in equity to have A. charged as trustee for him for one half of such balance. *Held,* that the bill could be maintained; and that the word "heirs" was not necessary in the agreement.

BILL IN EQUITY, filed May 13, 1893, to enforce an alleged trust in the proceeds of the sale of certain real estate. Hearing before *Morton,* J., who reported the case for the consideration of the full court, in substance as follows.

On March 15, 1888, Peleg F. Clapp took a deed to himself in fee of four houses from one Sarah A. Jones, and at the same time signed a note for $6,500 running for three years at five per cent to Julia A. Parker, and executed a mortgage on the houses to Parker to secure the note. He also at the same time signed

a note for $2,000 running for three years at twelve per cent to Augustus Russ, and executed a second mortgage on the houses for that sum to Russ.   The note to Russ was afterwards reduced by indorsement to $1,800, that sum only having been used.   Russ was Julia A. Parker's attorney, and made all her investments for her, and the $6,500 was obtained through him.

The $6,500 thus obtained from Parker through Russ, and the $1,800 thus obtained directly from Russ, were used to pay for the houses, and constituted the whole purchase price thereof, namely, $8,300.   The mortgages and notes were in the usual form, and the payments of interest were indorsed upon the notes each six months.

An agreement under seal, dated March 15, 1888, between Clapp and Russ, was drawn by Russ and signed by both parties at some time subsequently to March 18, 1888, and was as follows:

" Whereas Peleg F. Clapp has purchased by deeds dated, executed, and recorded March 15, 1888, a block of four houses on Colony Street, by deed from Charles H. Jones and Sara A. Jones his wife, and whereas Augustus Russ has furnished all the money for said purchase, to wit, the sum of eighty-three hundred dollars, for which a first mortgage has been given with interest at five per cent, and a second mortgage with interest at twelve per cent.

" Now it is agreed that the equity in all said real estate is, and shall be, until some sale and conveyance thereof is made, owned by the said Clapp and the said Russ in equal shares, and all cash expenses and disbursements on account of said property shall be borne in equal parts, except that interest on the second mortgage held by said Russ shall be computed only at six per cent in carrying out this agreement, and said Clapp shall collect the rents, and superintend the repairs made, and make no charge for his own time and services in such collections and supervision, and the net income of said property, after deducting interest at the rates expressed in this agreement, insurance, taxes, repairs, and other necessary disbursements on account of said property, shall be equally divided between said Russ and said Clapp, and an account and settlement between the parties shall be made as often as once in every six months.

" Said Russ further agrees that, said premises being kept in

reasonable repair, he will at any time within eighteen months from this date, provided the premises shall not have been seriously injured or destroyed by fire, accept a deed from said Clapp of the premises, conveying as good a title as received to his half, and assume and discharge mortgages."

Payments were made by Clapp to Russ, in accordance with the agreement, at intervals of six months, largely exceeding six per cent per annum upon the second mortgage.

Russ died on June 7, 1892, and the plaintiff was duly appointed executor of and trustee under his will.

On June 21, 1892, all the real estate in Suffolk county belonging to Clapp, including the houses in question, was transferred to the defendant by an indenture of trust, by which he was to hold the real estate for the benefit of Clapp and his family.

On May 3, 1893, the property in question was sold by the defendant to the Old Colony Railroad Company for $12,000. The mortgages to Parker and Russ were paid and discharged, and the notes cancelled, and the mortgages and notes delivered up to Clapp's agent.

After paying the mortgages and the expenses of the sale, there remained from the $12,000 a balance of $3,599. Of this the plaintiff claimed one half, and sought by this bill to have the defendant charged as trustee for the plaintiff for the sum of $1,799.50.

The plaintiff offered to show that in the letter-book of Russ there were copies of three letters from Russ to Clapp. The first letter was dated March 15, 1888, and was written on the day on which the deed and mortgages and notes above mentioned were signed and recorded, but after. In this letter Russ stated that one Walbridge, a clerk in his office, would see Clapp that night; the letter further stating, " Until I see you I will state what I understand our agreement to be," after which followed a brief statement of his understanding of the agreement. The second letter was dated March 16, 1888, and stated that an agreement was enclosed. The third letter was dated March 18, 1888, and referred to the fact that letters had been delivered to Clapp by Walbridge, and that an error in the letters should be corrected. It was agreed that the plaintiff could further show by Walbridge that he delivered to Clapp letters at or about the time of the

above conveyance to Clapp. It was also agreed that Clapp was at that time confined to his bed with a broken arm, and had no recollection either way as to the receipt of any such letters, or as to their contents, and could neither admit nor deny such receipt; and that he was not in possession of such letters.

The judge ruled that the copies were inadmissible for the purpose of affecting the construction of the written agreement between Russ and Clapp, and did not regard them in coming to a decision; and that, under the agreement, the plaintiff had an interest in the equity of redemption to the extent of one half of the net proceeds thereof; and he directed a decree to be entered for the plaintiff for $1,799.50. If the decree was right, it was to be affirmed. If with the letters excluded the decree was wrong, but the letters should have been admitted, and if admitted the decree was right, then also it was to be affirmed. If the letters were properly excluded and the decree was wrong, the bill was to be dismissed.

*C. R. Clapp*, (*H. N. Glover, Jr.* with him,) for the defendant.
*F. R. Jones*, for the plaintiff.

HOLMES, J. We are of opinion that the meaning of the agreement is, that, as Russ has advanced all the money for the purchase, he shall have one half of the profit of the venture if there is any, as well as the amount of his advance and interest, and that to this end he shall be owner of one half of the equity until a sale, and then, by implication, that he shall own or be entitled to one half of the proceeds.

The defendant contends that, even if this is the meaning of the instrument, yet as there is no mention of Russ's heirs it must fail of its intent, and give him only a life estate. But we cannot agree to the argument. This is not the case of a formal conveyance creating a trust, as in *McElroy* v. *McElroy*, 113 Mass. 509; it is a memorandum of a bargain previously made, and is put in writing to satisfy the statute, Pub. Sts. c. 141, § 1, and to furnish evidence. This is apparent on the face of the writing. It is agreed that the equity in the real estate is, as well as that it shall be, owned by Clapp and Russ in equal shares, and a reason is stated which, even if not true or binding in such a sense as to show a resulting trust, shows a consideration, goes back to the beginning of the transaction, and imports

that the understanding as to ownership dates from then.   If the parol evidence is considered, as it seems to have been in *Urann* v. *Coates*, 109 Mass. 581, 584, it leads to the same conclusion. The purport of the agreement as applied to the present state of facts, a sale having taken place, is similar to that of the one construed and held sufficient in *Urann* v. *Coates*.   In the latter, heirs were not mentioned.   See also *Barrell* v. *Joy*, 16 Mass. 221, 223.   *Arms* v. *Ashley*, 4 Pick. 71.   *Scituate* v. *Hanover*, 16 Pick. 222.   *Fisher* v. *Fields*, 10 Johns. 495.   *Wright* v. *Douglass*, 3 Seld. 564.   *Loring* v. *Palmer*, 118 U. S. 321.   Lewin, Trusts, (9th ed.) 54, 55.

We may add, that in a case of this kind we should go no further than we were compelled to go by binding authority in defeating the plainly expressed meaning of the instrument for want of a technicality which has been done away with altogether in many jurisdictions, and which would be simply vexatious if applied to a memorandum like this.   See Lewin, Trusts, (9th ed.) 113.   Shep. Touchst. (Prest. ed.) 106.

*Decree for the plaintiff.*