## R. M. STEVENSON v. FANNIE B. HAYNES et al., Appellants.

### Division Two, May 18, 1909.

1. **RESULTING TRUST: Facts Must Exist at Time of Purchase.** A resulting trust in real estate at once arises by operation of law where the purchase money is paid by one person and the legal title is placed in another. But the relationship of trustee and *cestui que trust* must result from facts existent at the time of the purchase or anterior thereto, and cannot be established or created by subsequent occurrences. No subsequent transaction, whether of payment or reimbursement of the grantee, can produce a trust in favor of the person furnishing the. money after the grantee has made a purchase with his own money or upon his own credit.

2. ————: ————: **Purchase With Cash and Note.** No trust will result to a person who advances purchase money merely as a loan. Haynes bought the land for $3,840, and assumed as part payment a mortgage for $2,200 and accrued interest, leaving a balance of $1,640. This he paid with $500 cash, his commission of two per cent and the accrued interest on the mortgage debt, amounting to $132, and by giving his note for $970 due in six months, which he paid within the three days of grace, and died two days later. On the day the deed was made he drew a draft on plaintiff for $1,640, the proceeds of which were placed to his credit in the bank, and three days later he sent his note to plaintiff, due in six months, to cover the amount of draft. *Held*, that Haynes made the purchase with his own money and credit; that even if the $500 paid in cash was a part of the $1,640 draft, there could be a resulting trust for only $500; but as Haynes gave his note for the $1,640, it was prima-facie at least, a loan, and the money belonged to Haynes and the note to plaintiff, and no resulting trust in the land has been shown by clear, cogent and satisfactory proof.

3. **EXPRESS TRUST: Half Interest: Taking Note for Whole: Memorandum.** An express trust that plaintiff owns a half interest in the land is not shown by the facts that the grantee on the day of the purchase drew his draft upon plaintiff for the entire amount of the purchase money and three days later sent him his note for that amount and three days later gave him a memorandum reciting "you own a one-half interest" in the land "bought by me, and for which you furnish the money to pay for same." The keeping of the note for the entire pur-

chase price is irreconcilable with the claim that plaintiff furnished any of the purchase money; besides, the memorandum does not say that he had furnished the money, but taken in its entirety it means that plaintiff was to have a half interest when he did furnish the money, and therefore the grantee's heirs are not estopped by the recital in the memorandum that "you own a half interest."

4. **LIEN: Borrowed Money.** The money with which the land was bought having been borrowed by the grantee from plaintiff, as evidenced by a promissory note for the amount, plaintiff is not entitled to a lien on the land to satisfy the loan.

Appeal from Nodaway Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

REVERSED (*with directions*).

*Anthony & Ford* and *L. C. Cook* for appellants.

(1)  The trust declared on is an express trust and must be proved by writing. Hillman v. Allen, 145 Mo. 638.  (2)  A resulting trust must be coeval with the making of the deeds.  Niver v. Crane, 98 N. Y. 40. (3)  And must be proved beyond a reasonable doubt. Smith v. Smith, 201 Mo. 547.  (4)  No trust will result for the person who advances the money as a loan. 1 Leading Cas. in Eq. (4 Am. Ed.), p. 323.  (5)  And the fact that the lender was to share in the profits of the rents and increased price on sale would not create a trust.  15 Am. and Eng. Ency. Law (2 Ed.), 1150. (6)  The person advancing the money does not even acquire a lien on the land purchased.

*Joseph H. Sayler* and *Shinabargar, Blagg & Ellison* for respondent.

The evidence, and particularly the memorandum letter, "Exhibit B," proves the existence of an express trust.  (a)  An express trust need not be created in writing, but is required only to be manifested and proven by some writing signed by the party who is, or

shall be, by law enabled to declare such trust. Sec. 3416, R. S. 1899. (b) A subsequent writing meets the requirements of the statute, if sufficient in its contents, even though the trust was created in parol. 28 Am. and Eng. Ency. Law (2 Ed.) 873; Lane v. Ewing, 31 Mo. 75; Cornelius v. Smith, 55 Mo. 528; Rogers v. Ramey, 137 Mo. 607; Hillman v. Allen, 145 Mo. 638; Mt. Calvary Church v. Albers, 174 Mo. 340; Foster v. Hale, 3 Ves. Jr. 696; Randall v. Margan, 12 Ves. Jr. 67; Smith v. Matthews, 3 D. & G. F. & J. 139; Ransdel v. Moore, 153 Ind. 401. (c) No particular form of words is necessary in a writing to prove an express trust. Heil v. Heil, 184 Mo. 665. (d) The writing expressing the trust may be in several separate instruments. 28 Am. and Eng. Ency. Law (2 Ed.), 879-80. (e) Or in the form of a letter. 28 Am. and Eng. Ency. Law (2 Ed.), 880; Moore v. Pickett, 62 Ill. 158. (f) The instrument, "Exhibit B," is sufficient in its contents to prove an express trust. Stratton v. Edwards, 174 Mass. 374; Dorr v. Clapp, 160 Mass. 538; Kentner v. Jones, 122 Ind. 148; Dexter v. MacDonald, 196 Mo. 373.

GANTT, P. J.—This is an appeal from a decree of the circuit court of Nodaway county. The suit was begun on the 19th of January, 1905. The defendants are the widow and minor son of Tennie E. Haynes, deceased, and the administrator of said deceased, and a tenant of the real estate involved in the litigation.

The petition in substance states that on or about the 27th day of August, 1903, during the lifetime of Tennie E. Haynes, the plaintiff and said Haynes for the purpose of speculation bought from Ada and Fred E. Crawford for the consideration of $3,840 the southeast quarter of the southwest quarter of section 10, and the northeast quarter of the southwest quarter of said section except sixteen acres off of the west side thereof, in township 63, range 37, in Nodaway

county; that by agreement between the plaintiff and said Tennie E. Haynes, for convenience in selling and disposing of the legal title to said land, the legal title to the same was taken in the name of the said Tennie E. Haynes; that at the time of the said purchase, there was a mortgage on said land dated December 19, 1902, in favor of C. M. Barber, for the sum of $2,200, with six per cent interest thereon, which said mortgage was assumed as a part of the consideration for said land, and that the same is now an existing lien upon said land, no part of the principal or interest having been paid since the purchase of said land as aforesaid. Plaintiff further stated that it was agreed by and between plaintiff and said Tennie Haynes that plaintiff was to furnish the money to pay said Crawfords the sum of $1,640, which plaintiff did furnish, and the same was paid to said Ada and Fred Crawford, which sum was upon the sale of said land to be repaid to plaintiff first out of the proceeds of said sale with six per cent interest thereon from the date of the purchase as aforesaid; that it was further agreed that upon the sale of said land, after the payment of the said mortgage and the interest thereon, and the said sum of $1,640 with interest, and the taxes assessed, the remaining net profits were to be equally divided between the plaintiff and said Tennie Haynes. Plaintiff states that the said land was purchased for speculation only and that said Tennie Haynes paid no part of the consideration therefor, the plaintiff furnishing all of the said purchase money and the said Tennie Haynes had no further or greater interest in said land than the one-half of the net profits of the rents received and the increased price upon the sale paid for the same with interest and taxes. Plaintiff states that the said Tennie Haynes died without making any provision by will or otherwise whereby plaintiff's interest in said land might be conveyed to plaintiff, and with the legal title remaining in said Tennie Haynes.

Plaintiff further stated that the defendant Bilby, as administrator, has made application to the probate court asking for an order of sale of said real estate as being the sole property of the said Tennie Haynes, deceased, for the purpose of paying the debts due and owing by said estate and that plaintiff will be in great danger of losing his said land and his interest therein unless said administrator be enjoined from selling the same. The prayer of the petition was for an injunction prohibiting the defendant, administrator, and any of the defendants, from selling the said land, that upon final hearing the court would order and decree the title should be divested out of the estate of said Tennie Haynes and the same vested in plaintiff, or that the said sum of $1,640 with interest thereon at six per cent per annum until the 27th of August, 1903, be declared a special lien against said land subject to the said mortgage of $2,200 as aforesaid. That the said land be sold subject to said mortgage of $2,200 and of the proceeds of said sale and rents, of which rents plaintiff prayed for an accounting, the sum of $1,640 with interest at six per cent from said date of purchase be first paid, and that the interest on said $2,200 mortgage and taxes and the cost of this proceeding be fully paid and that the remaining portion, if any, be equally divided between plaintiff and the estate of the said deceased, and for all proper decrees.

The answer was a general denial by all the defendants.

There is little dispute as to the facts in the case. On the 27th of August, 1903, Tennie E. Haynes purchased the real estate involved in this action from Ada and Fred Crawford for the consideration of $3,840 and as a part of said consideration assumed a mortgage of $2,200, leaving an actual cash consideration of $1,640. From this cash consideration Haynes deducted $132 interest then due on the mortgage and also his commission for making the sale, leaving $1,470,

which was paid, $500.00 in cash, and for the balance $970 Haynes gave his individual promissory note payable March 1, 1904. On the date of this purchase, August 27, 1903, Haynes drew a sight draft on R. M. Stevenson, Tarkio, Missouri, which was paid on that day by the Farmers Bank of Skidmore, Missouri, and the money deposited to the credit of Haynes. Three days later, September 1, 1903, Haynes sent to Stevenson, Haynes's promissory note for $1,640, due March 1, 1904, to cover the money paid on the sight draft.

There appears in the evidence also the following exhibit:

"R. M. Stevenson, you own a one-half interest in the Ada Crawford, bought by me August 27, 1903, and for which you furnish the money to pay for same. T. E. Haynes.

"September 3, 1903."

Haynes died March 4, 1904, with the title of the land still in him, and leaving his note to Stevenson for $1,640 unpaid and the said note was still held by Stevenson at the time of the trial of this cause.

Fred E. Crawford testified that he acted as the agent of Ada R. Crawford in the sale of this land to Haynes on the terms above set out. That on December 28, 1903, Stevenson wrote witness that "the interest on your loan was due December 15, $132. Please send this and oblige. Yours truly, R. M. Stevenson." This was the interest on the $2,200 mortgage.

J. D. Montgomery testified that he was acquainted with Stevenson and Haynes; that sometime in June, 1904, he had a conversation with Stevenson in which the latter said he had no interest in the land mentioned in the suit. This conversation occurred in Stevenson's bank at Tarkio in the presence of Mrs. Haynes. Witness did not know anything of the exhibit above set out, of September 3, 1903. Mrs. Haynes also testified that she was present with Mr. Montgomery and heard

the plaintiff state that he had no interest in the land at all.

Bilby, the administrator, testified that he had a conversation with the plaintiff about Mr. Haynes's affairs, and among other things plaintiff said he had Haynes's note for the Crawford land. "I asked him in regard to the Crawford land, and he said: I have his note for that for $1,640." Plaintiff had this note at the time that he had another claim for $2,025.00 against the estate for probate. He showed the two to the administrator and the probate judge, and the judge asked him why he did not probate that note for $1,640, and he answered: "I ain't ready."

The plaintiff, Stevenson, testified in his own behalf in regard to the conversation with Mr. Montgomery and Mrs. Haynes in the bank at Tarkio. He says that he told them that he did not know just where he stood or what interest he would have in the Crawford land; that he had paid for it, but that Mr. Haynes had made the deed to himself, and that he had taken a note for it, and he had not looked into it yet enough to know just what his standing or what interest he had in it; that he had paid for that land, but that Mr. Haynes had made the deed to himself, thinking he would sell it pretty quick, and had just sent him his note, given him his note for the land, and did not know just what his interest would be in it, yet. He denied that he told them that he had no interest, but did tell them that he did not know just how his interest would appear in this land. In regard to the conversation with Mr. Bilby he said the conversation was just about as Bilby stated it; that he told him he had paid for this land and had the note and did not probate it because he thought he would like to hold the land; that he took the note from Haynes and held it until after his death, and still held it at the time of the trial. The note was dated a few days later than the purchase. On recross-examination he stated that he took the note for the money.

This was in substance all the testimony in the case.

I. It is at once obvious that the decree of the circuit court must stand upon the proposition that the transaction by which Tennie E. Haynes obtained the title to Mrs. Ada Crawford's land created a trust in said Haynes for the benefit of plaintiff as to an undivided one-half of said land, subject to the prior mortgage of Barber therein. Was this a resulting trust by reason of plaintiff having furnished the purchase money for said land? It was long ago ruled in this court, in Kelly v. Johnson, 28 Mo. 249, that a resulting trust arises by operation of law where the purchase money of real estate is paid by one person and the legal title is transferred to another and the relation of trustee and *cestui que* trust in such cases must result *from the facts as they exist at the time of or anterior to the purchase,* and cannot be created by subsequent occurrences. [Shaw v. Shaw, 86 Mo. 594.]

This doctrine that the trust in order to exist must have been coeval with the deeds and that after one person has made a purchase with his own money or credit, no subsequent transaction, whether of payment or reimbursement, can produce such a trust in his favor, is well settled in other jurisdictions.

Chancellor KENT, in Botsford v. Burr, 2 Johns. Ch. 404, said: "If A purchases an estate with his own money, and takes the deed in the name of B, a trust results to A, *because he paid the money.* The whole foundation of the trust is the payment of the money, and that must be clearly proved. [Willis v. Willis, 2 Atk. 71.] If, therefore, the party who sets up a resulting trust made no payment, he cannot be permitted to show, by parol proof, that the purchase was made for his benefit, or on his account. This would be to overturn the Statute of Frauds; and so it was ruled by Lord Keeper HENLEY in the case of Bartlett v. Pickersgill, 4 East 577, note. [Hughes v. Moore, 7 Cranch

176.] . . . . Nor would a subsequent advance of money to the purchaser, after the purchase is thus complete and ended, alter the case.''

It appears from the testimony of Mr. Fred Crawford, that he acted as the agent of his wife, Mrs. Ada Crawford, in selling these lands to Tennie E. Haynes; that on the 27th of August, 1903, his wife and himself made their deed to this land to Haynes for $3,840; that Haynes paid on that day $500 cash, and gave his note for $970 of that date due March 1, 1904, bearing eight per cent interest, after maturity, which note was paid within the three days of grace, or on March 2, 1904, by Haynes. Haynes assumed a mortgage of $2,200 with six per cent interest and this was deducted out of the $3,840, the purchase price. After taking out the mortgage there was a balance of $1,640, and from this was next deducted $132 interest accrued or to accrue in December of that year. Haynes was allowed two per cent commission on the sale which was also deducted. Haynes died two days after paying the $970 note. To support his claim that he furnished the money to pay for this land, plaintiff introduced the draft for $1,640 drawn by Haynes on plaintiff August 27, 1903, the day the land was purchased and conveyed to Haynes by Mrs. Crawford. The proceeds of this draft were placed to the credit of Haynes by the Bank of Skidmore on that date. Three days later, September 1, 1903, Haynes sent plaintiff his note for $1,640 due March 1, 1904, to cover the amount of the draft. It would appear that plaintiff attaches importance to the fact that Haynes drew his draft for the amount of the purchase money over and above the mortgage which he assumed. But inasmuch as he paid only $500 cash, and gave his note for $970, there was no pressing necessity for $1,640 to complete the purchase, but if he had been required to pay the whole amount over and above the mortgage, he would only have required $1,470, as, by the terms of his contract with Crawford, he was allow-

ed to deduct the $132 accrued interest, and two per cent commission on the sale. So that the fact that the draft was for $1,640 loses its significance in the light of these additional facts.

Applying the principles already announced to these facts it is clear that Haynes paid a portion of the purchase price with his own money, his commission of two per cent, and with his own credit, his note for $970. Only $500 was paid in cash and if any trust resulted it could not have exceeded $500, and then only if the $500 was plaintiff's money. There is no suggestion that the $500 was furnished other than as a part of the $1,640, and if furnished by plaintiff it could only have been as a part of that sum. But if it was, then the further fact appears that Haynes gave his note to plaintiff for the whole $1,640, and prima-facie, at least, this *money* belonged to Haynes, and the *note,* to plaintiff, and hence was a loan and not a trust fund. It was held in Bartlett v. Pickersgill, 1 Eden 516, that no trust will result to a person who advances purchase money merely as a loan. [1 White & Tudor, Lead. Cases in Equity (4 Amer. Ed.), 323.] As plaintiff did not and could not testify, there is nothing to rebut the prima-facie case that the $1,640 was a loan from plaintiff to defendant as evidenced by Haynes's note to plaintiff for the amount, and not a trust. Moreover, it is the settled doctrine that the proofs to sustain a resulting trust must be clear, cogent and satisfying, and this evidence falls far short of that character of testimony. Our conclusion on this aspect of the case is that plaintiff cannot recover on the theory that a trust resulted to plaintiff by reason of having paid the purchase money for the land in suit.

II. But it is evident that the trust declared on is an express trust, to-wit, that plaintiff should and did furnish the whole of the purchase money and that the land should be sold and out of the proceeds the pur-

chase money so advanced, together with interest thereon at the rate of six per cent per annum from the date of purchase to the date of sale, should first be refunded to plaintiff, and that upon the sale of the land the $2,200 and interest secured by the mortgage should next be paid, and then the taxes, and the remaining net profits divided equally between Haynes and plaintiff. In support of this contention, it is insisted that the memorandum of date September 3, 1903, fully establishes this express trust. That memorandum is in these words:

"R. M. Stevenson, you own a one-half interest in the Ada Crawford bought by me August 27th, 1903, and for which you furnish the money to pay for same.

"T. E. HAYNES."

"Sept. 3rd, 1903."

Conceding that the word "land" may be supplied in this memorandum in spite of the Statute of Frauds, does it evidence such an express trust as that alleged by plaintiff in his petition? The query at once arises: if this purchase was made in pursuance of the alleged agreement and with the money represented by the draft, and plaintiff, in equity, was the owner of an undivided one-half interest in said land and held this memorandum of September 3rd, 1903, showing that fact, why did plaintiff take Haynes's note for the plaintiff's half of said purchase money with which said half interest was purchased, in addition to the money he furnished Haynes with which to buy the latter's half?

If plaintiff was to furnish all the money, why take Haynes's note at all? Why did he not take a declaration of trust reciting the advancement of the money for that purchase to Haynes? Why, if the land had been purchased in pursuance of such express agree-

ment, did plaintiff in the presence of J. D. Montgomery, Mrs. Haynes and Bilby, the administrator, at Tarkio, disclaim all interest in the land? According to his own evidence, he says he told them he didn't know what his interest would be in the land or just how his interest would appear in this land. If the agreement was that he was to furnish the money and have half of the net proceeds, certainly it would have been an easy matter to have so told them. When he showed the note for $1,640 to the administrator and probate judge, he was asked why he did not probate it, he replied "he wasn't ready yet." His account of that conversation is that he told the administrator just about as the administrator testified; that he had paid for the land and had the note for that, and didn't probate it because *he thought he would like to hold the land,* but he held on to the note even at the time of the trial of this cause. The least that can be said is that his statements did not indicate that he had an express agreement that he was the owner in equity of one half of this land and was to receive one-half of the profits thereof on a sale. On the contrary he was groping in the dark as to what his rights were, if any, against this land, and in what form he should assert a claim. When asked directly by the administrator in regard to this Crawford land, he simply said: "I have his [Haynes's] note for that." He did not exhibit the memorandum to the administrator, or widow, and make the claim which he now asserts in this suit. There is, in fact, no explanation of his possession of this memorandum, how or when he received it. But plaintiff insists that it is sufficient in and of itself to prove the express trust averred in his bill.

It is true the statute does not require the trust to be created by the writing, but only that it shall be manifested and proved by a writing signed by the party who declared the trust. [Sec. 3416, R. S. 1899.] Plaintiff in his abstract of this memorandum makes it read:

"R. M. Stevenson, you own a one-half interest in the Ada Crawford (land) bought by me August 27, 1903, and for which you furnished the money to pay for the same." Whereas the memorandum says: "for which you furnish the money to pay for same." In other words this instrument can most properly be construed as an option to plaintiff that he may have a one-half interest in said land, *if* he will *furnish* the money to pay for the same. It recites that Haynes had bought it, not that he and Stevenson had bought it. What reply plaintiff made to this offer, if any, we are not advised, but judging from plaintiff's statement to the widow, administrator, and Mr. Montgomery, he had never accepted the offer, or agreed to accept the half and pay the purchase money therefor, but preferred to hold his note for the money loaned. According to his own testimony he was in doubt what attitude he should assume in respect to the matter. In his bill he elects to ask a half of the net profits after a return of the loan subject to the mortgage. In our opinion the taking of the note for $1,640 and the retention of the same at the time of the trial is utterly irreconcilable with the claim that plaintiff *furnished any of the purchase money* for this land, and failing to do so, the estate of Mr. Haynes is not estopped by the memorandum in so far as it states that plaintiff owned a half interest in the land, since taken altogether it clearly meant plaintiff should furnish the money to pay for said interest as a condition to such ownership, which he never did.

There is moreover absolutely no evidence of any prior agreement between plaintiff and Haynes to purchase this land on their joint account and that it was so purchased with the money of plaintiff.

On the contrary, the proof largely preponderates in favor of the view that Haynes purchased the land for himself and subsequently made the offer to plaintiff that if he, plaintiff, would furnish the money, Haynes would let him become the owner of one-half.

The authorities cited by plaintiff, Stratton v. Edwards, 174 Mass. 374; Dorr v. Clapp, 160 Mass. 538, and Kintner v. Jones, 122 Ind. 148, were all cases in which the trusts were well defined and manifested by writings. The facts in each clearly distinguished them from the facts of this case.  Dexter v. MacDonald, 196 Mo. 373, in no manner militates against the views we have hereinbefore expressed as to the construction of the memorandum on which plaintiff relies.

Against the contention of plaintiff that this memorandum clearly evidenced an expressed trust, stands the unequivocal promise of the deceased, Mr. Haynes, in his promissory note to plaintiff for the $1,640, an undertaking utterly irreconcilable with the claim that he was borrowing only $820 of plaintiff to pay for one half of this land and that plaintiff was furnishing $820 to pay for his own share therein. The evidence strongly tends to prove a loan of $1,640 by plaintiff to Haynes and a subsequent offer, by the memorandum, to plaintiff to share the transaction with him, which offer was never accepted by plaintiff, and that plaintiff never claimed that he had any interest in this land, but expressly disclaimed any until this suit was commenced. It may be remarked further that the mere fact that plaintiff loaned the $1,640 to Haynes and that Haynes used a part thereof in the purchase of the land does not entitle plaintiff to a lien on the land.

In our opinion the plaintiff did not establish the trust alleged in his petition and the circuit court erred in decreeing him one-half of said land and a lien for one-half of the purchase money and interest on the other half.

The judgment of the circuit court is reversed with directions to dismiss the bill.

*Burgess* and *Fox, JJ.*, concur.