Ransdel *v.* Moore.

---

RANSDEL ET AL. *v.* MOORE ET AL.

[No. 18,500. Filed May 9, 1899. Rehearing denied Nov. 2, 1899.]

TRUSTS.—*Creation.—Enforcement.—Evidence.—Husband and Wife. —Statute of Frauds.*—A complaint alleged that a woman, having neither father nor mother nor children living, entered into a parol agreement with her prospective husband that the title to certain real estate belonging to her should be vested in plaintiffs, her brothers; that on her death-bed she requested her husband to procure an attorney to prepare a deed or will to carry out such agreement; that the husband failed to do so, but promised that he would hold the title in trust for the brothers, and would see that the title to the land was properly vested in them; that soon after her death the husband called the brothers together and offered to execute to them deeds to the real estate in accordance with the trust, but instead it was agreed in a writing, prepared by the husband, and signed by

153 393
155 543
s156 658
156 659
156 661

153 393
157 231
157 317

153 393
160 643

153 393
161 26
161 522
161 528

153 393
f167 188
167 486

153 393
f171 577

the brothers, that the husband should continue to hold the land in trust for them, and should undertake to find a purchaser therefor, and divide the proceeds among them; that he afterward mortgaged the land to secure a loan, and divided the proceeds thereof among the brothers, and in a letter to one of the brothers admitted the trust, and referred to the written agreement, and died before further executing the trust. *Held,* that the facts pleaded show the creation of a trust, and that the writings referred to were sufficient to establish and enforce same in favor of plaintiffs. *pp. 395-420.*

TRUSTS.—*Evidence.—Statute of Frauds.*—Where the terms of a trust are collected from several papers, it is not necessary that all of them should be signed, but it is sufficient if they are so referred to and connected with a paper that is signed that they may be identified as a part of the transaction. *p. 400.*

SAME.—*Evidence.*—Where the terms of a trust are collected from several papers, parol evidence may be admitted to show the position, situation, and surroundings of the parties at the time of their execution in order that they may be read and construed in the light of such facts and the circumstances of the case. *pp. 400, 401.*

SAME.—*Evidence.*—Where there is no written declaration of a trust, signed by the donor, by which the trust can be established, the same may be proved by any writing containing the necessary facts, signed by the trustee. *pp. 401, 402.*

SAME.—*Consideration.—Husband and Wife.*—A parol antenuptial agreement that the husband should have no interest in the wife's real estate at her death, but that the title to the same should vest in her brothers, constitutes a sufficient consideration for a promise by the husband made to his wife, on her death-bed, that he would hold the property in trust for their benefit. *pp. 403, 404.*

SAME.—*Consideration.—Evidence.*—The consideration of an express trust need not be set forth in writing, but may be proved by oral testimony. *p. 404.*

CONTRACTS.—*Promise Made for Benefit of Third Person.—Trusts.*— Where one person agrees with another, on a sufficient consideration, to do a thing for the benefit of a third person, such third person may enforce the same if not rescinded before acceptance. *pp. 405-407.*

TRUSTS.—*Creation of Trust.—Fraud.*—Where a husband by a promise made to his wife upon her death-bed prevents her from conveying certain real estate to her brothers, and on the death of the wife the real estate intended for the brothers is inherited by the husband, he being her only heir at law, the husband will be deemed a trustee by operation of law, whether he intended fraud or not, and the refusal of his heirs to execute the trust, after his death, has the effect to consummate the fraud. *pp. 408-420.*

From the Clinton Circuit Court.   *Reversed.*

*M. E. Clodfelter, S. M. Ralston* and *Michael Keefe,* for appellants.

*Ira M. Sharp,* for appellees.

MONKS, C. J.—This action was brought by appellants against appellees to enforce a trust in real estate. Appellees' demurrer for want of facts was sustained to the fourth and fifth paragraphs of the complaint, the other paragraphs having been ·withdrawn, and appellants refusing to plead further judgment was rendered against them. The action of the court in sustaining said demurrer is called in question by the assignment of errors.

It is alleged in the fourth paragraph: That, "Elizabeth A. Rodgers, the sister of appellants, was the owner of real estate in Clinton county, Indiana, [describing it] of the value of more than $6,000; that she also owned a large amount of real estate and personal property in Boone county, Indiana, of the value of more than $10,000; that appellants, brothers of said Elizabeth A. Rodgers, were and are of very moderate circumstances, and that appellant Thomas B. Ransdel was and is very poor financially, and a cripple, having lost both an arm and a leg before the marriage of said Elizabeth Rodgers to said Willis E. Moore; that in 1876 said Elizabeth A. Rodgers became engaged to marry one ·Willis E. Moore, who was possessed of an estate of very limited value, to wit, of the value of not exceeding $500; that the said Elizabeth A. Rodgers was a widow without children or their descendants living, and both her father and mother were dead, and she greatly desired that a large portion of her property should, at her death, vest in appellants, her brothers, and especially that they should become the owners in fee simple of her real estate in Clinton county, Indiana, which fact she made known to said Willis E. Moore before their marriage, and it was agreed between them that said Elizabeth A. should either by will or deed vest the title to said Clinton county

real estate, in her said brothers; that after said agreement said Elizabeth A. and the said Willis E. Moore were in the year 1878 lawfully married; that no children were born of such marriage, but that said Willis E. Moore had three children by a previous marriage, to wit, these appellees; that in 1894 said Elizabeth became sick and recognized the fact that she could not recover from said sickness, and knowing and believing that she would certainly die, requested her husband Willis E. Moore to procure an attorney or other competent person to make and prepare a deed or will for her signature and execution, to carry out her purpose and wish to vest the title to said real estate in appellants; that she was of sound mind and memory, but physically unable to leave the house; that her husband promised her he would do so, but failed and neglected to secure a person to draft such deed or will as requested by her; that she constantly grew worse and shortly afterwards in 1894, knowing and believeing that she would certainly die, she called her husband, Willis E. Moore, to her bedside, and as a last request asked him that some person competent to draft a deed or will be sent for in order that she might carry out her desire of vesting the title to said real estate in appellants, but that said Willis E. Moore again postponed her, telling her that she was then unable to make a will, but to rely on him and that he would see that her brothers the appellants should have said real estate, in case she should die without having made a will or conveyed the same to them; that he would in that event receive the title to said real estate in trust for them, and see that the title thereto was properly vested in them; that at the time of making said several requests the said Elizabeth A. Moore was of sound mind, able and competent to make and execute a deed or will, a fact well known to said Willis E. Moore, but said Elizabeth A. Moore, having full faith and unbounded confidence in her said husband acquiesced in said statement of her husband, and relied upon him in case of her death to receive and hold

said real estate in trust for the use and benefit of appellants, and that they should become the owners thereof in fee simple; that said Elizabeth A. constantly grew worse, and a short time thereafter died without making a will or deed, and without in any way conveying said real estate to appellants, except as herebefore set forth; that soon after her death the said Willis E. Moore, with the intention of carrying out the wishes of his deceased wife, and for the purpose of manifesting the trust imposed upon him by her, called the three brothers together for the purpose of vesting the title to said real estate in them, by executing to them a deed or deeds of conveyance; that appellant Walter H. Ransdel at that time resided in the state of Missouri, and the other brothers resided in different parts of the State of Indiana; that in response to said request said appellants went from their several homes to Thorntown, Indiana, and met the said Willis E. Moore, who thereupon proposed in accordance with said trust to execute a deed or deeds to appellants conveying said real estate to them, but the said Walter H. Ransdel being a resident of Missouri expressed a desire that said Willis E. Moore, instead of executing a deed for said real estate to appellants should take the charge and management thereof and continue to hold the same in trust for them and as early as possible find a purchaser for and sell the same, and divide the proceeds among appellants; that appellants consented to said arrangement, and said Willis E. Moore, in order to evidence said trust and arrangement, prepared and delivered to appellants a written memorandum in the words and figures, following, to wit: 'Know all men by these presents, that we the undersigned named, being brothers of Elizabeth A. Moore deceased, are willing when the farm is sold, and all the money furnished each of them by Willis E. Moore, her surviving husband, and all other expenses are taken from the proceeds of the sale of the land, that the remainder be equally divided among the brothers, while Walter H. Ransdel agrees that Thomas and William shall each have one hundred dol-

lars of his interest when paid. The sale and division together with the management of the land to be done by said Willis E. Moore. This 11th day of April, 1894. Walter H. Ransdel, Thomas B. Ransdel, William M. Ransdel.' That the farm land referred to in said written memorandum was and is the real estate above described in Clinton county, Indiana, and the said Walter H., Thomas B., and William M. Ransdel mentioned in said written memorandum were and are the appellants; that immediately after the said written memorandum of agreement had been so prepared, executed, and delivered to the appellants, the said Willis E. Moore took possession of said real estate for the use and benefit of appellants and proceeded to execute said trust by trying to sell said real estate for the use of appellants; that soon after he took possession of said real estate as such trustee, not being able to find a purchaser therefor, he applied to the Union Trust Company of Indianapolis, Indiana for a loan of $1,500 on a portion of said real estate, for the use and benefit of appellants, which sum he received in cash from said Trust Company about February 7, 1895, executing in his own name a mortgage to said Trust Company on said real estate; that on or about April 16, 1896, he applied to one Mary Douglas for a loan of $500, which sum he also received in cash for the use and benefit of appellants, and executed to her a mortgage on a portion of said real estate to secure the same. Soon after he so received the money, he, as such trustee, made a partial distribution thereof among appellants. The exact amount paid to each appellant they are now unable to state. That after the death of Elizabeth A. Moore the said Willis E. Moore at all times admitted said trust. That soon after receiving the money from said Trust Company as aforesaid, he sent to appellant Walter H. Ransdel a check for $300 thereof, and at the same time wrote a letter to him in which he admitted said trust, which letter is in the words and figures following, to wit:

Ransdel v. Moore.

. " 'Thorntown, Ind., March 4th, 1895.
Mr. W. H. Ransdel, North Fork, Mo.

Dear Brother:—I received your letter of the 1st, and was glad that you and yours were well as usual; and we have a man here now soliciting aid for the Nebraska sufferers, and it seems a deplorable affair, but we hope for better things in the next crop. Enclosed please find check for three hundred dollars. I failed to make a sale of the land on account of the condition of things, so I got some abstracters to look the matter up completely, and have got the title in shape that an Eastern company made a loan on it for fifteen hundred dollars, and the agreement reads, after dividing the proceeds equally between you three brothers, you give Thomas and William each one hundred dollars of your third, and on this amount they each get six hundred and you three, and what you and they get in the future will be equally divided between you and them. I am going to make the farm and my other income pay the loan off as fast as possible, and if I meet with a chance to sell before it is all paid the purchaser will assume the balance as part payment. I have rented the farm for one half of everything raised on it, delivered at the railroad station there, and he fixes the fences and cleans out the bushes off the farm. William has moved to Thorntown, and will farm five acres of land I have south of town with one acre where he lived. I built Thomas an addition to his house last summer for a kitchen, bedroom and pantry, and moved the one they had back for a summer kitchen. George and Lizzie are still keeping house for me, and we are getting along fairly well and will continue a while yet at least. Write soon and often. Yours truly, W. E. Moore. [On top of the second page of this letter is the following:] Elizabeth wanted to help the boys some and it seems it could not of come in a more needy time than now, and we hope what you can help them to now will be appreciated.'

"That the real estate and farm land referred to in said letter is the real estate in Clinton county, Indiana, above

described; that the said 'William' referred to in said letter is the appellant William M. Ransdel, and the said 'Thomas' referred to in said letter is the appellant Thomas B. Ransdel; that afterwards on September 24, 1896, said Willis E. Moore, while so holding said real estate in trust for appellants, died intestate in Boone county, Indiana; that he never at any time denied or renounced his trust, but at all times admitted the same; that appellees are the only children and heirs of said Willis E. Moore by a former marriage, and they each claim an interest in said real estate, adverse to the title and interest of appellants; that they have no interest or title whatever to said real estate or in the matter in controversy," etc.

It is settled law that under §3391 Burns 1894, §2969 Horner 1897, concerning trusts, that an express trust may be established by any writing or writings under the hand of the party to be charged, or of the party who is by law enabled to declare the same, provided, the fiduciary relations and the terms and conditions of the trust are set forth with sufficient certainty. *Kintner* v. *Jones*, 122 Ind. 148, 151; *Gaylord* v. *City of Lafayette*, 115 Ind. 423, 428, and cases cited; *Wright* v. *Moody*, 116 Ind. 175, 178, 179; *Kingsbury* v. *Burnside*, 58 Ill. 310, 11 Am. Rep. 67; 1 Perry on Trusts, §§79, 80, 81, 82, 83; 2 Pomeroy Eq. Jur., §§1006, 1007; Lewin on Trust (1 Am. ed. by Flint.) *55, *57, and notes; 27 Am. & Eng. Ency. of Law, 46-57, and notes; Browne on Stat. of Frauds (5th ed.) §97.

Letters, receipts, memoranda, or other writings signed by the trustee may be sufficient to establish a trust, but if the terms of the trust are collected from several papers, it is not necessary that all of them should be signed, but it is sufficient if they are so referred to and connected with the paper that is signed, that they may be identified and read as genuine papers, and a part of the transaction. *Gaylord* v. *City of Lafayette, supra,* p. 428; 1 Perry on Trusts (4th ed.), §83; Browne on Stat. Frauds, §§97, 105, 350, 355;

Ransdel *v.* Moore.

Lewin on Trusts, (1 Am. ed. by Flint), *55-*57, and notes; *Denton* v. *Davies*, 18 Ves. 499; *VanCott* v. *Prentice*, 104 N. Y. 45, 10 N. E. 257; *Newkirk* v. *Place*, 47 N. J. Eq. 477, 21 Atl. 124, 21 Am. Rep. 693; *Hamer* v. *Sidway*, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463; *McCandless* v. *Warner*, 26 W. Va. 754, 780; *Tawney* v. *Crowther*, 3 Brown's Ch. 161, 318; *Forster* v. *Hale*, 3 Ves. 696; *Forster* v. *Hale*, 5 Ves. 308, 315; *Morton* v. *Tewart*, 2 Younge & C. Ch. 67. In such case oral evidence may be admitted to show the position, situation, and surroundings of the parties at the time, in order that the writings may be read and construed in the light of such facts and the circumstances of the case. *Wills* v. *Ross*, 77 Ind. 1, 12, 13, 40 Am. Rep. 279, and cases cited; *Packard* v. *Putnam*, 57 N. H. 43, 51; *Mead* v. *Parker*, 115 Mass. 413, 15 Am. Rep. 110; *Hurley* v. *Brown*, 98 Mass. 545; *Dorr* v. *Clapp*, 160 Mass. 538, 542, 36 N. E. 474, and cases cited; *Urann* v. *Coates*, 109 Mass. 581, 584; *Oliver* v. *Hunting*, 44 L. R. Ch. Div. 205; *Newkirk* v. *Place*, *supra;* *McCandless* v. *Warner*, *supra*, p. 780; *Kingsbury* v. *Burnside*, *supra*, 78, 82, 83; Beach on Cont., §581, and cases cited; 1 Greenleaf's Ev., §§286, 287, 288, 295a; 2 Wharton's Ev. §§940, 941, 942, 943; Wood on Stat. of Frauds, §§395, 396, 449, and notes. This is upon the principle that the court may be placed, in regard to the surroundings and circumstances, as nearly as possible in the position of the parties whose writings are to be interpreted.

The settlor, under the allegations of the fourth paragraph, was Elizabeth A. Moore, and the trustee was her husband. *Brooks Appeal*, 109 Pa. St. 188; Browne on Stat. of Frauds (5th ed.), §§97, 98. She did not promise to create the trust, —she created it. If a writing, or writings, setting forth the terms of the trust had been signed by her this would have supplied the evidence to establish the trust. The trust was, therefore, created by her for the benefit of appellants, and although not in writing was not void, but could not be estab-

Ransdel v. Moore.

lished except by the proper evidence in writing. *Hadden* v. *Johnson*, 7 Ind. 394, 397; *Mather* v. *Scoles*, 35 Ind. 1, 3; *Owens* v. *Lewis*, 46 Ind. 488, 15 Am. Rep. 295; *Wills* v. *Ross*, *supra*, pp. 6, 7; Browne on Stat. of Frauds, (5th ed.), §§104, 115a. By her death the legal title vested in her husband, the trustee, and no further act or conveyance on her part was necessary to give effect to the trust. It was not executory so far as she was concerned. All that was required to vest the legal title to the land in controversy in appellants was a deed by the trustee conveying the same to them. If Mrs. Moore had delivered to her husband the value of said trust, in money, to be paid by him to appellants as a gift from her, the legal title to said money would have vested in appellants when the trustee delivered the same to them. Nothing would be required of the court in either case, in an action to enforce such trust, but to give effect to said trust, if the same could be established by the proper evidence; which in the case of an express trust of real estate the law requires to be in writing, signed by the proper person, and in the case of money, parol evidence would be sufficient. Browne on Stat. of Frauds (5th ed.), §82; 2 Story's Eq. Jur. §912; 1 Perry on Trusts, §86.

As there was no written declaration of said trust and the terms thereof, signed by Mrs. Moore prior to the time the land vested in her husband by her death, by which said trust could be established, the same may be proved by any writing or writings which contain the necessary facts, signed by her husband, the trustee. *McCandless* v. *Warner*, *supra*, p. 780; *McVay* v. *McVay*, 43 N. J. Eq. 47, 50, 51, 10 Atl. 178; *Tanner* v. *Skinner*, 74 Ky. (11 Bush.) 120; *McClellan* v. *McClellan*, 65 Me. 500, 506; *Moore* v. *Pickett*, 62 Ill. 158; 1 Perry on Trusts, §82 on pp. 66, 67, §83 on p. 71; 2 Pomeroy's Eq. Jur. §1007; Browne on Stat. of Frauds (5th ed.), §§98, 101, 104; 27 Am. & Eng. Ency. of Law, 50, 51; Hill on Trusts (4th Am. ed.), 96, 100.

The letter of March 4, 1895, signed by said Willis E. Moore, to one of the appellants, refers to the written memorandum of April 11, 1894, signed by appellants, and so connects the letter with said memorandum, the abstract of title, and the mortgage executed by him on said real estate, that the same must be read as a part of the letter. Reading these writings together in the light of the surroundings and circumstances alleged in said paragraph, the object and nature of the trust, the persons who are to take as *cestui que trustent* and the proportions in which they take, as well as their connection with the subject-matter of the trust are set forth with sufficient certainty. When such facts appear from the writings the trust will be enforced. 1 Perry on Trusts, §83; *Tanner* v. *Skinner, supra.*

It is insisted, however, by appellees that said writings do not show a perfectly created trust for the reason that to give effect to this trust the real estate was to be sold by Moore and the money divided among appellants. That it was therefore executory, and that the same was without consideration, and appellants were mere volunteers and could not enforce the trust. It is true that when there is no sufficient consideration and the trust is executory, that a voluntary settlor cannot be compelled to complete the trust, but when there is a sufficient consideration he may be compelled to do so. 1 Perry on Trusts, §§95, 96, 97; *Gaylord* v. *City of Lafayette, supra,* and cases cited. It would seem that said trust was perfectly declared under the rule stated in *Gaylord* v. *City of Lafayette, supra,* p. 429, and if so, it could be enforced by appellants, even if there was no consideration and they were mere volunteers. It is not necessary, however, to determine whether or not the express trust shown by said writings was perfectly created, or was only executory, for the reason that if it be conceded that said trust is executory so far as the trustee is concerned, it does not follow that the same is not supported by sufficient consideration.

The antenuptial agreement between Elizabeth A. Moore and Willis E. Moore was that the real estate in Clinton county, described in the complaint, should at her death be the property of appellants, either by will or deed; in other words, that the said husband should in such case have no interest in said real estate on the death of his wife. This agreement, although not in writing, was supported by a valuable consideration,—that of marriage. 1 Perry on Trusts, §110, and cases cited; 6 Am. & Eng. Ency. of Law (2nd ed.), pp. 724-726, and cases cited; *State* v. *Osborn*, 143 Ind. 671, 677, 678, and cases cited; *Marmon* v. *White*, 151 Ind. 445. The agreement of said Moore, made with his wife on her death-bed, to hold said land in trust for appellants and convey the same to them, and his acts after her death in carrying out said agreement, were in compliance with, and to accomplish the purpose of said antenuptial agreement. Said antenuptial agreement, although not in writing, being supported by a valuable consideration, constituted a sufficient consideration for the promise of said Moore to hold the real estate in controversy in trust for appellants. *Wills* v. *Ross*, 77 Ind. 1, 6-10, 40 Am. Rep. 279, and cases cited; *Brown* v. *Rawlings*, 72 Ind. 505, 510; *Thomas* v. *Merry*, 113 Ind. 83, 88; *Post, Adm.*, v. *Losey*, 111 Ind. 74, 88. Moreover the vesting of the title to said real estate in said Moore under the facts alleged was alone sufficient consideration to support his agreement to hold the same in trust for, and convey the same to, appellants. *Woodward* v. *Wilcox*, 27 Ind. 207, 214; *Miller* v. *Billingsly*, 41 Ind. 489; *Switzer* v. *Skiles*, 3 Gilman, (Ill.) 529, 44 Am. Dec. 723, 728; White & Tudor's Leading Cases in Equity, (4th Am. ed.), 432, 433.

It is not required that the consideration for an express trust be set forth in the writings; the consideration may be proved by oral testimony. *Wills* v. *Ross*, *supra*, p. 12; *Arms* v. *Ashley*, 4 Pick. 71, 74. It is clear, therefore, that the facts alleged show that there was a sufficient consideration for the trust shown by said writings.

Since the decision of *Bird* v. *Lanius*, 7 Ind. 615, it has been the settled rule, under our code, that when one person agrees with another, on a sufficient consideration, to do a thing for the benefit of a third person, such third person may enforce the same if not rescinded before acceptance. *Waterman* v. *Morgan*, 114 Ind. 237, and cases cited; *Henderson* v. *McDonald*, 84 Ind. 149, and cases cited; *Gwaltney* v. *Wheeler*, 26 Ind. 415, 417.

The rule at law was otherwise based upon the ground that there was no privity of contract between parties. *Farlow* v. *Kemp*, 7 Blackf. 544, 546. It is not 'necessary that any consideration move from the third party; it is enough if there is a sufficient consideration between the parties who make the agreement for the benefit of the third party. *Gwaltney* v. *Wheeler, supra,* 417; *Miller* v. *Billingsly*, 41 Ind. 499; *Mathews* v. *Reitenour*, 31 Ind. 31, 33-34.

In *Miller* v. *Billingsly, supra,* one Hays gave to Miller a draft on a firm in Cincinnati, Ohio, for $1,000, and it was agreed between them that when Miller received the money he was to retain $300 as a loan, and pay the remainder to three persons, one of whom was named Billingsly, fixing the amount to be paid to each person. Miller, a few days after receiving the money upon the draft, paid two of the persons the amounts agreed to be paid them. Miller failed and neglected to pay the money to Billingsly, the other person named, nor did he inform Billingsly that he had the money for him. The money sent to Billingsly was intended as a gift, and Miller was directed to say to Billingsly, when he delivered the money to him, that it was sent as a present to him by Hays. About two years after Miller received the money, and after the death of Hays, Billingsly was informed of the facts and demanded the same of Miller, who refused to pay it. It was held that he could recover. The court, at p. 492, said: "In the above cases, the person making the promise, or receiving the money or article, is treated as a trustee for the person for whose benefit the prom-

ise was made, or for whose use the money or article of value was received." As we have heretofore shown, there is no difference between the creation and enforcement of an express trust as to real and personal property, except that in case of real estate the same can only be established by a writing or writings signed by the proper person, while the trust as to personal property may be established by parol evidence. Browne on Stat. of Frauds (5th ed.), §82; 2 Story's Eq. Jur., §912; Perry on Trusts, §86.

Appellees insist that under the rule declared in *Wright* v. *Moody*, 116 Ind. 175, appellants cannot maintain this action on the facts alleged in said fourth paragraph. What was said in that case must be limited to the facts there stated. In that case there was no writing signed by any one manifesting any trust, and it was sought to establish the trust by oral testimony alone, when the same, even if it had been in writing, was merely executory on the part of the settlor. It is true it was said in that case at page 179 that, "When two persons, for a valuable consideration between themselves, covenant to do some act for the benefit of a volunteer, the latter cannot enforce performance of the covenant against the two, although each one might as against the other." All the cases cited to sustain this proposition, except the first, are predicated upon the old idea of want of privity of contract on the part of the person for whose benefit the act was to be done, which has long since been repudiated in this State.

The first case cited, *Gaylord* v. *City of Lafayette*, 115 Ind. 423, only decides, that, when property has been conveyed upon a trust, the precise nature of which has been imperfectly declared, or when the donor has manifested his purpose, ultimately, at a time, and in a manner, thereafter to be determined by himself or by the trustee, to bestow the property upon the person named, the trust is incomplete and executory, because it has not passed beyond the control of the donor, and courts of equity will not aid a volunteer to carry

into effect an imperfect or an executory trust.  It is suffi-
cient to say, however, that this is not a case where two per-
sons, for a valuable consideration between themselves, cove-
nanted to do some act for the benefit of a third, and the lat-
ter is seeking to enforce the covenant against the two, but
where one person orally promised another, for a sufficient
consideration, to hold real estate, vested in the promisor by
the promisee, in trust for third persons, who are seeking to
enforce the trust upon writings subsequently signed by the
person making the promise.  Concerning such a case the
American editors of White and Tudor's Leading Cases in
Equity (4th ed.), at p. 432, vol. 1, say:  "Where real es-
tate is conveyed, with an express or implied agreement that
it shall be held for the use of a third person, equity will
fasten a trust on the conscience of the grantee.  The trust
arises from the breach of confidence on the part of the
grantee, and a declaration of it in writing and under his
hand, is evidence which he will not be permitted to contra-
vene."  Whatever the rule may be elsewhere, in this State,
under the code, it has been held, since the decision of Bird
v. Lanius, supra, that such third persons may enforce any
contracts made for their benefit upon a sufficient considera-
tion, whether they paid or furnished any part thereof or not.

It follows that appellants are entitled to enforce said trust
against appellees, and that the court erred in sustaining the
demurrer to said fourth paragraph.

The question presented by the demurrer to the fifth para-
graph of complaint is, whether or not a trust can be enforced
against a man who, when his wife is on her death-bed, by his
promises prevents a deed or will or other writing being made
by her in favor of her brothers, and on the death of the wife
the real estate intended for the brothers is inherited by said
husband, he being her only heir at law.

The rule established by the authorities is that when an
heir or devisee in a will prevents the testator from providing
for one for whom he would have provided but for the inter-

ference of the heir or devisee, such heir or devisee will be deemed a trustee, by operation of law, of the property, real or personal, received by him from the testator's estate, to the amount or extent that the defrauded party would have received had not the intention of the deceased been interfered with. This rule applies also when an heir prevents the making of a will or deed in favor of another, and thereby inherits the property that would otherwise have been given such other person. Hill on Trustees (4th Am. ed.), 234; 1 Perry on Trusts, §§181, 182; 1 Story's Eq. Jur., §§256, 281; Pomeroy's Eq. Jur., §430, §919, p. 1305, §1054, and cases cited in notes; 1 Redfield on Wills (4th ed.), pp. 511, 512; *Gilpatrick* v. *Glidden*, 81 Me. 137, 10 Am. St. 245. It is not essential to the creation of such a trust that the fraud be actual, it may be actual or constructive. *Meredith* v. *Meredith*, 150 Ind. 299, 301; *Giffen* v. *Taylor*, 139 Ind. 573, 578, and authorities cited; *Cox* v. *Arnsmann*, 76 Ind. 210, 212, 213; 2 Washburn on Real Prop. (5th ed.), 520.

An actual fraudulent intention on the part of the heir or devisee is not necessary to the creation of a trust of this nature. The great weight of authority in England, and in this country, in such a case is that after the death of the testator or intestate, equity will convert the devisee or heir into a trustee, whether when he gave his assent he intended fraud or not; the final refusal of himself, if living, or if dead, of his heirs or devisees, to execute such trust, having the effect to consummate the fraud.

It was said in *Cox* v. *Arnsmann*, 76 Ind. 210, at p. 212, "And wherever property is acquired by fraud, or where, though originally acquired without fraud, it is against equity that it should be retained by the party, there equity raises a constructive trust, which is held not to be within the statute, 2 Washburn on Real Prop. (5th ed.), p. 520, and which may be proved by parol.* * * So, in the case of *Hoge* v. *Hoge*, 1 Watts, 163, it was held that, if a testator be induced to make a devise, by the promise of the devisee that it should

be applied for the benefit of another, equity, upon these facts, would create a constructive trust, which might be established by parol."

As said in Pomeroy's Eq. Jur., §155: "If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner." This has been the doctrine of the English courts for more than 200 years.

In Rookwood's case, Cro. Eliz., 164 (1590), a father intended to charge his land with four pounds per annum for each of his two youngest sons, but the eldest son promised that if the father would not do so, he would pay the same to them. Said promise was enforced.

In *Dutton* v. *Poole*, Vent. 318, 2 Lev. 210, T. Jones 102 (1678), the father of plaintiff's wife, being seized of a wood which he intended to sell to raise portions for younger children, the defendant being his heir, promised the father, in consideration of his forbearing to sell it, to pay plaintiff's wife 1,000 pounds. The promise was enforced.

In *Chamberlaine* v. *Chamberlaine*, 2 Freem. Ch. 34, 2 Eq. Cas. Abr. 43 (1678), where a father, being about to change his will lest there might not be assets enough besides the lands settled upon his son to pay certain legacies to his daughter, was assured by the son that he would pay them in case of deficiency of assets, if the will were not changed, the son was held to his promise; the chancellor remarking that it was the constant practice of the court to make such decrees on such promises.

In 1684, where her son promised the executrix that if she would obtain a new will naming him as executor he would hold it in trust for her, which she did, the lord keeper decreed

the trust, notwithstanding the statute of frauds. *Thynn* v. *Thynn,* 1 Vern. 296.

And in 1689, where a copyholder, intending to leave the greater part of his estate to his godson, was persuaded by his wife, on her promise to carry out his intention, to give the whole to her, the court, notwithstanding the statute, enforced the trust. *Devenish* v. *Baines,* Ch. Prec. 3.

In *Oldham* v. *Litchford,* 2 Vern. 506, 2 Eq. Cas. Abr. 44 (1705), lands were charged with an annuity, on proof that the testator was prevented from charging the lands therewith in his will by a promise of payment by the devisee.

In 1747, a testatrix having given a bond for 360 pounds to the plaintiff, afterwards by a new will gave it to another, on the latter's promise to give it, at her decease, to the plaintiff, and the performance of the promise was decreed against her representatives, against the interposition of the statute of frauds, Lord Chancellor Hardwick said: "I know of no case where the court has not decreed it, whether such an undertaking was before the will has been made, or after * * *. This is not setting up anything in opposition to the will, but taking care that what has been undertaken shall have its effect: A will being ambulatory, if the testatrix has a conversation with a legatee, and the legatee promises that, in consideration of the testator's disposition in favor of her, she will do an act in favor of a third person, and the testatrix lets the will stand, it is very proper the person who undertook to do the act should perform, because, I must take it, if she had not so promised, the testatrix would have altered her will." *Drakeford* v. *Wilks,* 3 Atk. 539.

In *Reech* v. *Kennegal,* 1 Ves. Sen. 123, Amb. 67, 1 Wils. 227 (1748), a residuary legatee, who satisfied the testator that he need not change his will in order to give a nephew 100 pounds, for he himself would pay it, was held trustee, and a trust imposed on the residue of the assets. Lord Chancellor Hardwick said: "The court will not suffer the statute to protect it [fraud] so as that any one should run away with

Ransdel v. Moore.

a benefit not intended.　\* \* \*　There is a breach of promise; but attended also with fraud upon the testator as well as the plaintiff, by representing as if there was no occasion to alter the will."

In 1796, instead of changing his will with the avowed intention of increasing the annuity to his wife, the testator told his residuary legatee he would "leave it to his generosity to pay it as he promised",—and a trust was imposed on the residue of the assets.　The master of the rolls said:　"The word 'generosity' cannot be construed to take away the effect of a solemn desire of the testator coupled with the promise of the defendant.　The defendant had no intention of fraud at that time; for he desired the testator to make a new will. Leaving it to his generosity, it is leaving it to his honor and conscience \* \* \*.　The question is, whether by reposing that trust in the defendant the testator was not prevented from making a new will.　The defendant ought to have told him, that if he did not put it in his will, he would not do it. Instead of that he promised to do it; upon which the testator refuses to make a new will."　*Barrow* v. *Greenough*, 3 Ves. 152.

In 1804, Lord Eldon said:　"If a father devises to his youngest son; who promises that, if the estate is devised to him, he will pay 10,000 pounds to the eldest son, this court would compel the former to discover, whether that passed in parol; and, if he acknowledged it, even praying the benefit of the statute, he would be a trustee to the value of 10,000 pounds."　*Strickland* v. *Aldridge*, 9 Ves. 516.

The like result is brought about by the silent assent of the devisee to a like proposal of the testator.　*Byrn* v. *Godfrey*, 4 Ves. 6, 10; *Paine* v. *Hall*, 18 Ves. 475.

In *Podmore* v. *Gunning*, 7 Sim. 644, 654 (1836), natural children of the testator alleged in substance in their bill, that the testator's wife promised, in consideration of his giving to her the whole estate, to leave it to them at her decease, upon the faith of which he did it.　Shadwell, V. C., said: . "My

opinion is that, if it were perfectly clear that that state of circumstances took place which the plaintiffs represent upon their bill, they would be entitled to the relief that they ask."

In 1852 a residuary estate was devised with an oral intimation by the testator to the devisee, that he had confidence that he would carry out the testator's intentions, which devisee well knew and assented to, and the devisee was held a trustee. Lord Justice Turner, V. C., in discussing the question of the devisee's undertaking said: "The true test of the answer to the question is this, would the testator have left his property to the defendants if the defendants had stated in answer to that question, that they would not carry out the disposition which the testator intended to effect through the medium of the trust, which he had declared in the instructions. No one can doubt, that, if these defendants had stated that they would not carry out the intentions of this testator, this disposition in their favor would not have been found in this will." *Russell* v. *Jackson*, 10 Hare, 204, 211.

In the case of *Wallgrave* v. *Tebbs*, 2 Kay. & J., 313, 321, the joint devisees of real estate denied that they ever knew anything of the testator's intentions till after his decease; but an unsigned letter written by him expressed his confidence in their application of the devised property, in accordance with his desires. Wood, V. C., (then Lord Hatherly), upheld the trust, saying: "Where a person, knowing that a testator in making a disposition in his favor intends it to be applied for purposes other than his own benefit, either expressly promises, or by silence implies, that he will carry the testator's intention into effect, and the property is left to him upon the faith of that promise or undertaking, it is in effect a case of trust; and, in such a case, the court will not allow the devisee to set up the statute of frauds—or rather the statute of wills, by which the statute of frauds is now, in this respect, superseded; and for this reason; the devisee by his conduct has induced the testator to leave him the property; and as Lord Justice Turner says in *Russell* v. *Jackson*, su-

*pra,* no one can doubt, that, if the devisee had stated that he would not carry into effect the intentions of the testator, the disposition in his favor would not have been found in the will. But in this the court does not violate the spirit of the statute; but for the same end, namely, prevention of fraud, it ingrafts the trust on the devise by admitting evidence which the statute would in terms exclude, in order to prevent a party from applying property to a purpose foreign to that for which he undertook to hold it."

In 1867, in *Jones* v. *Badley,* L. R. 3 Eq. 635, 652, Lord Romilly, M. R., quoted the foregoing extract entire, and declared the law to be therein very "accurately and very comprehensively stated." On the appeal in 1868, Lord Cairns quoted the same extract, and pronounced it "the clear and felicitous exposition of the law." *Jones* v. *Badley,* L. R. 3, Ch. App. 362.

And in 1878, in *Rowbotham* v. *Dunnett,* L. R. 8, Ch. Div. 430, 436, Malins, V. C., made the same quotation, and pronounced the law "correctly laid down", but dismissed the bill for want of proof.

In 1869, in *McCormick* v. *Grogan,* L. R. 4, H. L. 82, where, under the circumstances of the case, no trust was decreed, some of the language of Lord Westbury in his opinion, where he says the court "must see that personal fraud—*malis animus*—is proved," etc., has sometimes been urged as requiring more than the authorities already cited; but when it is considered in connection with the facts before him, and with his own illustrations in the same opinion, that erroneous view vanishes. After discussing the principle of dealing with the statute of frauds and of wills, he said: "If an individual on his death-bed, or at any other time, is persuaded by his heir at law, or his next of kin, to abstain from making a will, or if the same individual, having made a will, communicates the disposition to the person on the face of the will benefited by that disposition, but, at the same time, says to him that he has a purpose to answer which he has not ex-

pressed in the will, but which he depends on the disponee to carry into effect, and the disponee assents to it, either expressly, or by any mode of action which the disponee knows must give to the testator the impression and belief that he fully assents to the request, then, undoubtedly, the heir at law in the one case, and the disponee in the other, will be converted into trustees, simply on the principle that an individual shall not be benefited by his own personal fraud."

In 1873, the same view was expressed by Sir James Bacon, V. C., in *Norris* v. *Frazer*, L. R. 15, Eq. 318, 330, where a husband and wife were devisees of the bulk of the property of a testator who expressed a desire that an annuity of 300 pounds should be provided for a third person, which the wife testified she promised, and the husband assented to. The vice-chancellor said: "Mr. Swanston has read, particularly from Lord Westbury's judgment in *McCormick* v. *Grogan*, the condition as to what the court has to see proved before it admits any such claim, and he says it must be proved that there was direct personal fraud * *. *. If the statement made by Mrs. Frazer [one of the devisees] be true, then a more direct, a more distinct personal fraud could not be committed than for Mrs. F. to refuse to perform that promise which she made to the testator upon his death-bed."

To the same general purport are *Riordan* v. *Banon*, 10 Ir. Eq. 645, and Fleetwood's Case, L. R. 15, Ch. Div. 594, 606 (decided in 1880). In the latter case, Hall, V. C., after reviewing numerous cases, said: "The testator, at least when his purpose is communicated to and accepted by the proposed legatee, makes the disposition to him on the faith of his carrying out his promise, and it would be a fraud in him to refuse to perform that promise."

In 1884, in *Boyes* v. *Carritt*, L. R. 26, Ch. Div. 531, 535, in speaking of this class of cases, Kay, J., said: "In these cases the court has compelled discovery and performance of the promise, treating it as a trust binding the conscience of the donee, on the ground that otherwise a fraud

would be committed, because it is to be presumed that if it had not been for such promise the testator would not have made or would have revoked the gift," citing cases *supra*.

The following English cases are to the same effect, *Sellack* v. *Harris*, 2 Eq. Cas. Abr. 46, 5 Vin. Abr. 521, §31 (1709); *Bulkley* v. *Wilford*, 2 Cl. & Fin. 102, 177, 8 Bligh. 111 (1834); *Segrave* v. *Kirwan*, Beat. 157 (1828); *Nanney* v. *Williams*, 22 Beav. 452 (1856).

The doctrine declared in England has been adopted and recognized in a number of states. In *Browne* v. *Browne*, 1 Harr. & J. (Md.) 430, a father was induced to make no will, and let his property in Maryland descend to his eldest son, on the latter's promise to convey the same to his youngest brother, provided, as was expected, he himself succeeded to certain property in Scotland, which he did subsequently inherit. And the court enforced the promise.

In *Owing's Case*, 1 Bland, (Md.) 370, 17 Am. Dec. 311, 338, a brother declared his intention to devise his estate to his sister, whereupon his mother dissuaded him by promising that, if he would leave his estate to another sister, she (the mother) would provide for the first intended devisee. Upon the faith of this promise the brother made his will as requested by his mother. After the death of the testator the mother acknowledged the promise. Held, that the same could be enforced. Bland, C., after approving the English doctrine of enforcing oral promises in such cases, said: "But if the individual who has been so disappointed of an express provision by the deceased, could not have the promise enforced, his loss would be altogether irretrievable. The heir or person making the promise would be suffered to frustrate the intention of the deceased, to practice a fraud with perfect impunity, and the statute of frauds, if it were allowed to apply, would be made to operate for the protection instead of the prevention of fraud."

In *McLellan* v. *McLean*, 2 Head (Tenn.) 684, a testator who had no children gave all his estate to his wife, on her

verbal promise to divide it by her will equally among his and her relatives. She disposed of the estate contrary to her promise. Held enforceable after her death.

In *Dowd* v. *Tucker*, 41 Conn. 197, 14 Am. Law Reg. N. S. 477, after a testatrix had given all of her estate to the defendant, she changed her mind, and wanted so to alter her will as to give plaintiff her half of certain real estate, whereupon defendant said to her: "You are weak and need not execute a codicil in order to give plaintiff what you desire, let the will stand, and I will deed this real estate to her." Held, that the defendant held said real estate in trust for the plaintiff, and was bound to convey the same to her.

In *Brook* v. *Chappell*, 34 Wis. 405, a testator who had given his whole estate to James, believing himself in *extremis*, called James to his bed-side, and in the presence of several witnesses told him there were several persons to whom he wished to give something, and directed James to write them down, naming them, which he thereupon did, and finally charged James to carry out these directions as faithfully as the ones contained in the will, to which request James made no response, or perhaps said "well". Held, that James was chargeable with the payment of the sums mentioned.

In *Gilpatrick* v. *Glidden*, 81 Me. 137, 16 Atl. 464, 2 L. R. A. 662, 10 Am. St. 245, the husband expressed to his wife his intention of devising all his property to his own heirs, but was induced by her to sell and will it to her, in form absolute, upon her assurance that she would use it during her natural life, and at her death would devise it to his heirs. The wife survived the husband, but died without performing her agreement; and it was held that the heirs of the husband could enforce the trust against the heirs of the wife. The court said: "Applying the principle to the facts in this case: Mr. G. was persuaded by his wife to change his intention of leaving his property to his own heirs and to give it to her by reason of her express promise to give the re-

mainder to his heirs, which she omitted to do. His will was regularly probated and the legal title passed thereby to her. His heirs claim that remainder because her conduct operated as a fraud upon her husband as well as upon them, and that by reason thereof she held the property impressed with a trust and she made a trustee. Equity does not interfere with the will. That remains unchallenged. Nor does it assume to set aside the statute of frauds which the defendants invoke. But on account of her conduct in procuring the legal title to herself, equity does declare that she cannot conscientiously hold it or its proceeds for her own exclusive benefit, and imposes on her conscience the obligation to hold all she did not use during her life for the benefit of her husband's heirs (plaintiffs) as the equitable owners thereof, and the additional obligation of perfecting their ownership by will or otherwise. But as she has deceased, equity can reach the personal or the proceeds of both real and personal in the hands of her personal representatives and any of the real estate in the hands of any subsequent holder who is not a *bona fide* purchaser thereof without notice holding it relieved of the trust. Pomeroy's Eq. Jur., §§431, 1053. We do not mean, however, that it is essential to the upholding of such a trust that a devisee should have been an active agent in procuring the devise to be made in his favor, for the great current of English authority during the last two centuries as well as that of this country holds that, if either before or after the making of the will, the testator makes known to the devisee his desire that the property shall be disposed of in a certain legal manner other than that mentioned in the will, and that he relies upon the devisee to carry it into effect; and the latter by any words or acts calculated to, and which he knows do in fact cause the testator to believe that the devisee fully assents thereto and in consequence thereof the devise is made, but after the decease of the testator the devisee refuses to perform his agreement,—equity will decree a trust

and convert the devisee into a trustee, whether, when he gave his assent, he intended a fraud or not,—the final refusal having the effect of consummating the fraud."

In Parker v. Uries, Ex., 21 Pa. St. 305. Thomas Urie on his death-bed requested his father, his only heir at law, to pay Thomas D. Parker $500 out of his estate, which. the father promised to do. The father survived the son, but died without complying with his promise. Held, that the promise could be enforced against his estate. The court said: "Where one on his death-bed expresses a wish to his heir at law that certain persons, whom he names, shall receive of his estate specified articles and sums of money, as gifts from him, and the heir promises him that his request shall be fulfilled, the necessary implication is, that the promise is to be performed after the death of the promisee, and that the consideration is, that the promisor shall succeed to his estate under the intestate laws. * * * If the promisee, relying on the promise, make no other provision, by will or otherwise, for the objects of his bounty, but die intestate, thus leaving his estate to fall into the hands of the heir, to an amount greater than the specified donations, the heir is bound, in conscience and in law to fulfill the contract. If the promise be made by a father to a son, the moral obligation is strengthened by reason of the existing relation, and the confidence which the one would naturally repose in the other."

The English doctrine declared in the foregoing cases has also been adopted and approved in the following cases: Williams v. Fitch, 18 N. Y. 546; O'Hara v. Dudley, 95 N. Y. 403, 47 Am. Rep. 53; Hoge v. Hoge, 1 Watts (Pa.) 163, 215, 216, 26 Am. Dec. 52, and note p. 60; Jones v. McKee, 3 Pa. St. 496, 45 Am. Dec. 661, and note p. 665; McKee v. Jones, 6 Pa. St. 425; Church v. Ruland, 64 Pa. St. 432; Shultz's Appeal, 80 Pa. St. 396; note to Thompson v. White, 1 Am. Dec. p. 258; Glass v. Hulbert, 102 Mass. 24, 39, 40, 3 Am. Rep. 418, 430, 431; Olliffe v. Wells,—?

130 Mass. 221, 224, and cases cited; *Towles* v. *Burton*, Rich. Eq. Cases (S. C.) 146, 24 Am. Dec. 409, and note pp. 413-417; *Williams* v. *Vreeland*, 29 N. J. Eq. 417, 32 N. J. Eq. 135, 734, and cases cited in note pp. 135-145; *Ragsdale* v. *Ragsdale*, 68 Miss. 92, 8 South. 315, 24 Am. St. 256, and note p. 263, 11 L. R. A. 316; *Curdy* v. *Berton*, 79 Cal. 420, 21 Pac. 858, 12 Am. St. 157, 5 L. R. A. 189; note to *Gilpatrick* v. *Glidden*, 2 L. R. A. 662, 16 Atl. 464; note to *Dowd* v. *Tucker*, 14 Am. Law Reg. (N. S.) 482; note to *Gore* v. *Clark*, 20 L. R. A. 465-471, 16 S. E. 614. See authorities cited in *Orth* v. *Orth*, 145 Ind., pp. 184, 197, 198, 32 L. R. A. 298. See, also, *Arnold* v. *Cord*, 16 Ind. 177; *Teague* v. *Fowler*, 56 Ind. 569; *Hunt* v. *Elliott*, 80 Ind. 245, 258, 41 Am. Rep. 794; *Scheffermyer* v. *Schaper*, 97 Ind. 70, 73; *Rector* v. *Shirk*, 92 Ind. 31, 33, 34; *Butt* v. *Butt*, 91 Ind. 305, 307-310; *Piper* v. *Hoard*, 107 N. Y. 73, 13 N. E. 626, 1 Am. St. 789; *Wood* v. *Rabe*, 96 N. Y. 414, 426, 48 Am. Rep. 640; *Ryan* v. *Dox*, 34 N. Y. 307, 90 Am. Dec. 696; *Larmon* v. *Knight*, 140 Ill. 232, 29 N. E. 1116, 33 Am. St. 229, and note p. 233; *Nordholt* v. *Nordholt*, 87 Cal. 552, 26 Pac. 599, 22 Am. St. 268; *Brikson* v. *Brikson*, 75 Cal. 525, 17 Pac. 698, 7 Am. St. 189; *Culler* v. *Babcock*, 81 Wis. 195, 51 N. W. 420, 29 Am. St. 882, and note, p. 890; *Laing* v. *McKee*, 13 Mich. 124, 87 Am. Dec. 728, and note, p. 740; *Morey* v. *Herrick*, 18 Pa. St. 123, 128, 129; *Beegle* v. *Wentz*, 55 Pa. St. 369, 373, 374, and cases cited, 93 Am. Dec. 762; *Faust* v. *Haas*, 73 Pa. St. 295, 300, 301; *Boynton* v. *Housler*, 73 Pa. St. 453, 457; *Wolford* v. *Herrington*, 74 Pa. St. 311, 313, 15 Am. Rep. 548; *Brown* v. *Doane*, 86 Ga. 32, 11 L. R. A. 381, 12 S. E. 179, and note; *Bennett* v. *Harper*, 36 W. Va. 546, 15 S. E. 143.

Appellees cite *Orth* v. *Orth*, 145 Ind. 184, 32 L. R. A., 298, as holding to the contrary. In that case it was held that the letter written by the testator to his wife did not, with reasonable certainty, define the character and limits of the

Louisville, etc., R. Co. *v.* Wagner.

trust, and that said letter was merely advisory and left every-thing to her discretion and that therefore her promise was merely to exercise her discretion, and that the letter and promise of the wife raised no trust.   In that case the general doctrine heretofore stated was expressly recognized; the court at p. 201, said:   "If Mrs. Orth, by fraud, had procured the execution of the will in this case, equity would have held her a trustee for the benefit of those entitled by law to the property."

We are not required to approve all the cases cited, nor all that is said in many of them in order to sustain the fifth paragraph of complaint.   It is sufficient that said paragraph is good, under the rule stated as being established by the authorities.

Judgment reversed, with instructions to overrule the de-murrer to the fourth and fifth paragraphs of complaint with leave to file amended complaint or additional paragraphs of complaint if desired, and for further proceedings not incon-sistent with this opinion.