MOCK *v.* P. F. GOODRICH CORPORATION ET AL.

[No. 16,530. Filed January 22, 1942. Rehearing denied March 24, 1942.]

*Donald F. Vanderveer* and *Brubaker & Rockhill,* all of Warsaw, for appellant.

*Goodrich & Emison,* of Indianapolis, and *Albert B. Chipman,* of Plymouth, for appellees.

CURTIS, J.—The controlling facts herein, each established by at least some competent evidence, are substantially as follows: Prior to January 1, 1930, the State Bank of Warsaw, hereinafter referred to for brevity as the State Bank, and the Indiana Loan and Trust Company, hereinafter for brevity referred to as the Trust Company, had been operating as two separate and distinct state banking institutions in the City of Warsaw, Indiana. On that date both banks were solvent going institutions, at which time there was executed a written contract in which all of the stockholders of each of said two banks joined. This contract made provision for the unification of said two banks into one institution. This unification was accomplished; and the name of the new institution was Indiana State Bank and Trust Company, which for the sake of brevity is hereinafter referred to as the Uni-

fied Bank. The important provisions of the said contract provided that the capitalization of the Unified Bank should be $200,000.00 in paid-up capital stock and $25,000.00 in surplus; that the banking plant of the said State Bank was to be abandoned and the plant of the Trust Company would be used to carry on the banking business of the Unified Bank. Paragraph 11 of the said agreement provided that each of said banks was required to put into the Unified Bank $112,500.00 of the $225,000.00 Unified Bank aggregate banking capital. Said contributions were to consist of the said banking plant used and assets to be valued and approved by a joint committee named in the agreement. A sufficient amount of approved assets of each of said banks, to equal and cover their respective deposits and all other liabilities, was likewise to be selected and placed into the Unified Bank. We now quote paragraph 23 of said agreement as follows:

"All property of every kind belonging to The Bank and all property of every kind belonging to the Trust Company, which is not put into the Consolidated institution in accordance with paragraph 11," (providing the mode of making up capital, surplus and banking assets to cover liabilities) "shall become respectively the joint property of the stockholders of The Bank and the Trust Company, in proportion to their several stock interests, immediately prior to the consolidation, and shall be managed as trusts by the trust department of the consolidated institutions, in the usual way and at the usual and established compensation, and reports of such property held in trust shall be rendered to each of such stockholders from time to time by the consolidated institution."

Provision was also made in the said agreement authorizing the committee named therein to take the necessary steps either to form a new corporation or to amend the charter of the Trust Company so as to

bring the said union into legal being at the time the agreement was to be consummated. The committee was granted full power to carry the provisions of the agreement to a completion, and was to have power to arrange and determine the details of procedure where no specific provision was made in the agreement, and to meet any contingency that might arise. As paragraph 24 of the said agreement has some relation to the matter under consideration, we now set it forth as follows:

"24. Taxes under either Federal or State laws, on account of property owned or business done, prior to January 1, 1930, by The Bank and by the Trust Company shall be the obligations of the respective stockholders of these corporations in proportion to their several stockholding interests on January 1, 1930, immediately prior to the consummation of the merger. Primarily such taxes shall be paid by the trust department of the consolidated institution and it shall be entitled to immediate reimbursement from the funds of the respective trusts described in paragraph 23. If funds for that purpose are not available from said respective trustee, then each such stockholder hereby promises to pay his proportionate shares on demand, and on failure so to do, the amount with interest at the prevailing rate shall be a lien on his interest in the consolidated institution, and shall be deducted from his next ensuing dividend."

In carrying out its powers, the committee caused the name of the Trust Company to be changed and the capital stock to be increased from one thousand shares of common stock of the par value of $100.00 each to two thousand shares of common stock of the par value of $100.00 each, and made the required exchange of stock certificates to all former stockholders of the two institutions who were issued stock proportionate to

their holdings in the respective banks. In carrying out the agreement, each bank duly delivered to the Unified Bank approved assets to cover its portion of the capital structure of the Unified Bank, to wit, $112,500.00, together with other sufficient approved assets to cover the deposits and liabilities of each, all of which assets were placed upon the books of the Unified Bank pursuant to such agreement.

Each bank had assets which, at the time of the unification, were not needed for use to form its respective portion of said new capital structure and to cover completely its respective deposits and other liabilities. During the trial of this cause, these remaining assets were called and referred to as overplus. This so-called overplus was treated as in the nature of a dividend in kind, declared by the stockholders of each institution and held in trust by the Unified Bank for them respectively under the provisions of paragraph 23, above quoted.

There was a record made by the committee of these so-called dividends in kind of the Trust Company. This record was lost or destroyed and not produced at the trial, but there was oral evidence from a member of the committee that such said so-called dividend in kind was made up substantially of the items of property listed and set forth in the petitioner's amended petition and consisted of specifically described real estate and choses in action and the like. These overplus assets were carried on the statement of the Unified Bank as a trust fund and dealt with by it as a trust account for the benefit of the shareholders of the Trust Company and of the State Bank respectively, the evidences of debts being filed in separate portfolios. There was some evidence that meticulous care was not exercised entirely in the segregation, but that in the main there

was substantial segregation. The overplus account in the Trust Company (the one under consideration herein) consisted of choses in action, promissory notes, certificates of deposit, and five separate parcels of real estate which the Trust Company owned at the time of the unification. There never was any formal conveyance of this real estate to the Unified Bank as Trustee, but the title continued in the name of the Trust Company. It appears from the evidence that the trust ledger items were not accurately described; and the principal evidence of identification at the trial consisted of personal recollection of the officers of the Trust Company and of the Unified Bank, who were actively in contact with the said items both before and after the unification. At no time were any of the assets, which were segregated into the trust fund as provided by said section 23 of the contract, carried as assets of the Unified Bank other than in its trust capacity, except in a few instances where exchanges and transfers from one to the other were made. The evidence also shows that from time to time some questionable items of debts due to the Trust Company would be charged off as worthless. In some instances these items that were charged off would later be paid, and the cash so taken in would be treated as if it were a time deposit made by a stranger to the transaction, except that certificates of deposit would be issued on the same.

A year or more after the unification was completed and the Unified Bank was functioning as such, it was discovered that certain items which were passed on by the joint committee as acceptable for the Unified Bank were questionable as sound assets; and in the overplus there were discovered good sound assets. Without any authority of the beneficiaries of the trust and over the objection of some of the members of the Board of

Directors of the Unified Bank, which objections were on the ground that the items in the trust funds could not be interchanged for items in the Unified Bank, as accepted by the joint committee, certain officers and directors of the Unified Bank substituted or interchanged certain questionable assets contained in the assets of the Unified Bank for certain sound items in the trust funds, placing the latter on the books of and among the Unified Bank's assets and the former among the trust assets, which would thenceforth be carried as trust property for the respective shareholders. It was also shown by the evidence that, in effecting the segregation of the overplus trust fund from the assets transferred to the Unified Bank, occasion would arise where some assets would be "split," that is to say, a part of the said assets would be retained in the trust fund and a part passed on to the Unified Bank. When collections were made on such items, the Unified Bank would take all of the collections thereon until its share or part was liquidated, and the balance left over would be credited on the liquidation of the trust assets in the overplus account. Two trust records were set up, one in favor of the stockholders of the State Bank and one in favor of the stockholders of the Trust Company; one of said trust records being kept by one of the employees of the Unified Bank and the other record being kept by another employee of the Unified Bank.

Some two years after the unification was completed, a resolution was adopted by the directors of the Unified Bank directing specified officers to prepare and execute trust certificates for each of the shareholders of the State Bank and of the Trust Company, respectively, evidencing their respective interest in the two funds. It does not appear that such certificates were ever delivered to any of such stockholders of the Trust Com-

pany, although such certificates were prepared. The Unified Bank functioned as a banking institution from on or about January 1, 1930, until the latter part of December, 1932, at which time it was taken over by the then State Banking Commissioner; and in January, 1933, said Unified Bank, on the application of the commissioner, was adjudicated insolvent by the Kosciusko Circuit Court, and the appellant was appointed as its receiver. The appellant duly qualified as such receiver and has been acting as such since that time.

The appellees filed the petition which is the basis of this action in said receivership proceedings as stockholders of the Trust Company, for themselves and all other stockholders thereof similarly situated, to have a trust declared of said overplus items in the Trust Company, and for the appointment of a trustee thereof, it being alleged in said petition that the receiver had declined to recognize the integrity of the said trust fund and had used some of the assets therein in conducting the said receivership. This petition was later amended, setting forth in detail the names and holdings of the various stockholders of the Trust Company, and setting forth the said procedure of reorganization and unification, and the contract under which such unification was completed, and likewise, setting forth the specific items that were originally segregated into the trust account for the benefit of the Trust Company's shareholders, and praying that all items of the trust so enumerated should be declared as a special trust deposit and held for the use and benefit of the Trust Company's shareholders, and not otherwise, and that a trustee be appointed to accept and administer the same, and for an accounting. To this petition the appellant filed an answer in general denial, after which the cause

was submitted to the court for trial without the intervention of a jury.

The trial court found for the petitioners. The finding was, in effect, that the prayer of the petitioners should prevail, and that the appellant had acquired possession of substantially all of the property described in the petition as a trust estate and subject to said trust, and not otherwise. The finding then detailed the property by items, the detail of which we need not set out. The court further found that a trustee should be appointed for such trust property, and that the appellant should be required to deliver unto said trustee all of said items described in the finding, and that the appellant should on or before July 1, 1939, file a full and complete report of not only what he has done as such receiver, but of each and every act of the Unified Bank as a going bank with relation to said trust fund. It was further found that William S. Rogers should be appointed as trustee, and that he should file bond in the sum of $50,000.00, with surety to the approval of the court, and that he should qualify as such trustee on or before July 31, 1939, and that he be empowered to accept said trust estate and to administer the same as provided in said written agreement heretofore mentioned, and that the appellant should deliver and transfer unto said trustee all of the said trust estate. The record shows that the said Rogers qualified as such trustee. The judgment followed the finding.

In due time, the appellant filed a motion for new trial upon the following causes or grounds:

1. That the court erred in granting the intervening petitioners herein a change of venue.
2. That the court erred in overruling' the motion of the appellant to strike out said intervening petition.

3. That the decision of the court is not sustained by sufficient evidence.

4. That the decision of the court is contrary to law.

The appellant in his brief has abandoned the first two causes in the motion for new trial, heretofore set out, by a failure to present the same in his brief. No further consideration will be given these two causes. The said third and fourth causes of the motion for new trial are the only ones attempted to be presented by the appellant.

The appellant, in support of his assignment of error, presents and argues three propositions, as follows:

"First: That the stockholders of the Indiana Loan and Trust Company (Trust Company) could not by any arrangement between themselves withdraw a part of the assets and capital of the corporation, and provide for its distribution among themselves to the injury of the creditors of the corporation."

"Secondly: That the burden of proof as to the existence of a trust rests on the party who alleges it and the burden of identifying the trust property in a satisfactory manner, and the items thereof rests on the party seeking to establish the trust. This requirement has not been met by the Appellee."

"Third: At most, the Appellees are only entitled to an undivided share jointly with the stockholders of the State Bank of the withdrawn assets."

With reference to the last proposition, it seems entirely clear that the agreement, under which the two banks were unified into the Unified Bank, established clearly that the overplus in each of said banks was to be kept in separate trusts and be administered separately for the respective stockholders in each bank. If there could be any ambiguity in the

language of said paragraph 23, which made such provisions, this ambiguity was cleared up by the acts of the parties themselves. There was an abundance of evidence before the trial court upon which it could conclude that these trusts were entirely separate. We therefore find no merit in the said third proposition of the appellant. In the case of *Central Pharmacal Co.* v. *Salb* (1939), 106 Ind. App. 495, 503, 13 N. E. (2d) 875, this court said: "It is proper for the parties to a contract to place a practical construction upon it which the courts will recognize and follow where it is legally possible to do so." The court there cites several Indiana cases to that point.

The appellees concede that the first sentence of the appellant's Proposition 2 is a correct abstract statement of law, but takes issue with the last sentence as to this requirement not having been met by the appellees. It is true that the evidence as to the specific items of the alleged trust might have been clearer if the written record of these items of property made by the committee had been produced at the trial. It was shown, however, that this record was either lost or destroyed and could not be produced, and accordingly oral evidence of one member of the committee was heard identifying substantially the items of the property listed in the petitioner's amended petition. We think the trial court was justified in concluding that there was a sufficient identification of the trust *res*. This identification was complete enough so that the trial court had no apparent difficulty in enumerating said items in its finding. When the trust *res* is set up, if perchance there may be some item or items that get into the inventory that do not belong there, the law affords an ample remedy for their removal from the inventory.

It is also to be remembered that the written agreement which is the basis of the trust herein contended for, was executed by all of the stockholders of ■ each of the two banks involved and ratified by the board of directors of each of said banks. With reference to the five parcels of real estate, it may be said that these parcels were never transferred to the Unified Bank but always remained in the name of the Trust Company. While it is true that there has been no conveyance of said five items of real estate from the Trust Company, it has always been the law that where a declaration of trust is made, however informal, for the benefit of designated beneficiaries, realty embraced in the declaration vests in the trustee although there be no formal conveyance thereof. See *Richards* v. *Wilson* (1916), 185 Ind. 335, 112 N. E. 780; *Nesbitt* v. *Stevens* (1903), 161 Ind. 519, 69 N. E. 256; *Kintner* v. *Jones* (1890), 122 Ind. 148, 23 N. E. 701. See also *Ransdel* v. *Moore* (1899), 153 Ind. 393, 53 N. E. 767, in which many of the cases of this country and of England are collected, sustaining the above proposition.

The appellees also concede that the appellant's first proposition is correct as an abstract proposition of law, but say that the evidence overwhelmingly ■ shows that it is not applicable to the instant case. It is to be noted in this connection that when the two banks decided to unite, the evidence shows that both were solvent going institutions and that after the Unified Bank was organized on or about January 1, 1930, it continued as a solvent going banking institution for almost three years thereafter, and that the evidence failed to show that at the time of the unification, there was any forewarning or portent as to what was later to happen in the banking world.

We doubt the propriety and the legal right of the appellant at this time to question the unification of the banks, it being remembered that he is a receiver now of the Unified Bank. To question this unification, he would in a sense be impeaching his own title and status as receiver, and besides we think that nothing has been presented by the appellant to show that the unification was either unfair or illegal.

The record is such as to warrant the trial court in concluding that the unification of the two banks was fully accomplished and in entire good faith, and acted upon by all of the interested parties for almost three years. We think the court was correct in its conclusion that the said appellant has no rights in the trust property involved herein. The plan of setting up the two trusts and keeping them separate is to be commended. In our opinion it was the best way of carrying out the said contract between the parties.

Upon the record as a whole, we conclude that the trial court was amply justified in reaching the conclusion it reached. The court, therefore, did not err in overruling the appellant's motion for new trial, and the judgment is therefore affirmed.

NOTE.—Reported in 38 N. E. (2d) 900.